Scott McKay (ISB#4309)
Nathan Pittman (ISB#9430)
NEVIN, BENJAMIN & McKAY LLP
303 West Bannock
P.O. Box 2772
Boise, Idaho 83701
Telephone: (208) 343-1000
Facsimile: (208) 345-8274
smckay@nbmlaw.com
npittman@nbmlaw.com

Alexandra Krasovec (*pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4160
Facsimile: (310) 312-4224
akrasovec@manatt.com

Attorneys for the Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW VANDERSLOOT, an Idaho Resident,<br><br>Plaintiff,<br><br>vs.<br><br>ATYG, LLC, a New York limited liability Company,<br><br>Defendant. | CASE NO. 4:26-cv-275-DCN<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## INTRODUCTION

Plaintiff seeks to recover hundreds of thousands of dollars in statutory damages under the Telephone Consumer Protection Act ("TCPA") based on a list of hundreds of alleged calls and text messages he purportedly received on two different "residential" phone numbers. Yet his allegations do not appear to be based on personal knowledge. Instead, they rely on information allegedly "compiled" by The Telespam Project, LLC, a third party that advertises services designed to help individuals "monetize their efforts against telespammers." Based on that information, Plaintiff speculates that the communications were initiated by unknown callers or agents purportedly acting on behalf of "Steady Capital Solutions," which he further alleges, only "on information and belief," is a d/b/a of ATYG. These allegations fall far short of plausibly establishing that ATYG initiated, authorized, or is otherwise legally responsible for any of the challenged communications. Beyond this, Plaintiff also fails to allege facts supporting the essential TCPA elements of his claims, including that any communication was made using an automatic telephone dialing system ("ATDS"), an artificial or prerecorded voice, or constituted a "telephone solicitation" as defined by the statute.

To state a plausible TCPA claim, Plaintiff must allege facts—not just labels and conclusions—showing that ATYG is directly or vicariously liable for the challenged communications and that the communications meet the statutory elements of Sections 227(b) and (c) of the TCPA. Plaintiff does neither. These deficiencies are particularly pronounced with respect to Plaintiff's claims under Section 227(c). The overwhelming majority of the communications identified are text messages. But text messages do not constitute telephone calls under that provision. Plaintiff therefore cannot base a Section 227(c) claim on the numerous text messages listed in the FAC.

Because Plaintiff fails to allege facts plausibly establishing that (1) ATYG made, initiated, or is otherwise legally responsible for the challenged communications, (2) any communication was made using an ATDS or artificial or prerecorded voice, (3) any communication constituted a "telephone solicitation" (as defined by the TCPA regulations), and (4) text messages are actionable under Section 227(c), the FAC fails to state a claim and should be dismissed in its entirety.

## PROCEDURAL HISTORY

Plaintiff filed his original Complaint on June 23, 2025, in the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County, Case No. CV10-25-3679. *See* Dkt. 1. ATYG removed the case to this Court on May 5, 2026. *See id*. Prior to responding to the original Complaint, and in accordance with this Court's motion practice standards regarding motions to dismiss (*See* https://www.id.uscourts.gov/district/judges/nye/Motion_Practice.cfm), counsel for ATYG advised Plaintiff's counsel telephonically and by email of perceived shortcomings in the allegations of the Complaint and that Plaintiff should file an amended complaint. Plaintiff's counsel advised it did not intend to amend its Complaint and that Defendant should proceed with a motion. ATYG therefore filed its Motion to Dismiss the Complaint on June 10, 2026. *See* Dkt. 14.

Rather than respond to the Motion, on July 1, 2026, Plaintiff filed his First Amended Complaint which attempts (but fails) to address the deficiencies raised in the Motion, including by removing Plaintiff's Idaho state law cause of action and adding new allegations purporting to show that "ATYG is responsible for the calls at issue." *See* Dkt. 15. However, the grounds for ATYG's Motion, including the deficiencies Plaintiff attempts to address in his FAC, were provided to Plaintiff's counsel prior to filing the Motion. Plaintiff declined to amend at that time, thus forcing ATYG to incur attorney's fees and costs filing its Motion. Accordingly, ATYG disputes that Plaintiff should be permitted any further amendment.

## RELEVANT FACTS AND ALLEGATIONS

Plaintiff alleges that he is a residential telephone subscriber whose phone numbers have been registered on the National Do-Not-Call ("NDNCR") Registry since March 2016. Dkt. 15, ¶¶ 16-18 & Ex. B. According to Plaintiff, "Defendant has repeatedly contacted Plaintiff on the referenced telephone numbers, by both call and text" over a nearly four-year period and "[s]ome of these calls appear to have been made under other business names that are, on information and belief, substituted or alternative names for the Defendant and/or names of entities affiliated or connected with Defendant," including Steady Capital Solutions, First Choice Capital, and Tier Funding. *Id*. ¶¶ 20-21.

Rather than provide specific allegations about the substance or circumstances of these communications, Plaintiff simply attaches three charts to his FAC. Exhibit A purports to include the date of the alleged call or text, whether it was received as a call or text, and the phone number from which the call or text originated. *Id*., Ex. A. Exhibits C and D purport to provide "evidence" of the content of some of these communications and "notes" indicating how the callers identified themselves. *Id*., Exs. C & D. According to the "notes," some of the agents identified themselves as "representing" Steady Capital, while other calls merely "led to emails from the domain name "steadycapitalsolutions.com." It is unclear whether Plaintiff compiled these charts based upon his own personal knowledge and interactions with the callers or whether this information was compiled by The Telespam Project, as the FAC suggests. *See* Dkt. 15 ¶ 21 (referencing Exhibit A as "compiled to the best of Plaintiff's knowledge at this time by the Telespam Project, LLC").

Plaintiff contends that a portion of the 137 calls and texts he purportedly received were sent using an ATDS because they "are generic, highly repetitive (and often repeated), and bear every sign of having been sent (in the TCPA's language) 'on a random or sequential basis.'" *Id*.,

Ex. D. Plaintiff claims he has never been a customer or provided his consent to ATYG. *Id.* ¶¶ 19, 22, 25. He does not, however, allege he never inquired regarding ATYG's services.

## APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. A legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also id.* (pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Moreover, while the Court must generally accept Plaintiff's factual allegations as true, the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012) (citation omitted).

## ARGUMENT

### I. THE FAC SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLAUSIBLY ALLEGE ANY THEORY OF LIABILITY AGAINST ATYG.

Plaintiff's claims fail at the outset because he does not plausibly allege that ATYG was responsible—either directly or vicariously—for any of the calls or texts identified in Exhibit A. This threshold defect is fatal to every claim asserted in the FAC.

The TCPA recognizes two potential theories of liability: direct liability or vicarious liability. *See Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). To state a TCPA claim, Plaintiff must plausibly allege either that ATYG itself made or initiated the subject communication or that the communication was made by a third party acting as ATYG's agent under traditional common-law agency principles. *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019).

Absent factual allegations supporting one of those theories, a TCPA claim cannot proceed. *See Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023).

Direct liability applies only to persons or entities that "make" or "initiate" calls directly to the plaintiff. *See Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C. Rcd. 6574, 6583 ¶ 26 (2013)). In this context, "a person or entity 'initiates' a telephone call when it takes the steps necessary to ***physically place*** a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6583 ¶ 26 (emphasis added). *See also Hamilton v. El-Moussa*, 2020 WL 8993127, at *2 (C.D. Cal. Apr. 30, 2020) (dismissing TCPA claim on this basis); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (holding plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue).

Here, Plaintiff alleges that ATYG "repeatedly contacted" him and that certain communications "appear to have been made under other business names" that are, "on information and belief," affiliated with ATYG, including "Steady Capital Solutions." Dkt. 15, ¶ 20. But the FAC still lacks plausible factual allegations supporting that conclusion. Plaintiff does not allege, for example, that: (i) any of the telephone numbers listed in Exhibit A were owned or controlled by ATYG; (ii) he ever called any of those numbers and reached ATYG; (iii) that any of the callers were employees of ATYG or (iv) that his caller ID identified ATYG. Instead, Plaintiff merely contends that some of the callers purportedly stated they "represent[ed]" Steady Capital Solutions in some unknown capacity or that he later received an email from the domain steadycapitalsolutions.com. *See* Ex. C. Such allegations, without more, are insufficient to state a plausible TCPA claim. *See, e.g.,*

*Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6-10 (E.D. Va. Nov. 12, 2020) (dismissing on this basis, finding allegations that "the caller identified himself as associated with" the defendant and tried to sell him a home warranty were insufficient without more); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *1-3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis, even though one plaintiff allegedly spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant by the caller); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing TCPA claim on direct liability grounds even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations in the complaint that Choice Energy had any active role or involvement in [physically] placing the calls" at issue); *Belleville v. Florida Insur. Svcs, Inc.*, 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in relevant part*, 2024 WL 2794108 (May 31, 2024) (dismissing on this basis, although one caller allegedly said they were calling "from" defendant and provided defendant's website on the call, where plaintiff merely alleged "in conclusory fashion that Defendant was directly involved in making" the subject calls). The same result is warranted here.

The need for factual allegations connecting ATYG to the challenged communications is particularly important here, as Plaintiff is not alleging that he received a small number of communications from a single, identifiable source. Rather, Plaintiff alleges that he received dozens of calls and texts from numerous telephone numbers over a period of years. *See* Dkt. 15, Exs. A & C. He also makes virtually identical allegations in a separate TCPA case pending in this District. *See Vandersloot v. Pro Source Lending Group, LLC*, No. 4:25-cv-00678-BLW-REP (D. Idaho) (Dkt. Nos. 1, 13). Notably, a comparison of the call and text logs in the two actions reveals multiple overlapping dates on which Plaintiff alleges he received communications from entirely different defendants. Yet, in neither case does Plaintiff allege facts plausibly connecting the identified

telephone numbers to the particular defendant he seeks to hold liable.

Allowing such allegations to proceed would effectively eliminate the TCPA's threshold requirement that a plaintiff plausibly allege *the defendant* made or initiated the challenged communications. Indeed, as discussed above, an entity is generally not directly liable for calls made by third parties. *See Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* 544 F. Supp. 3d 1323, 1331–32 (S.D. Fla. 2021) (holding that TCPA defendants "cannot be directly liable for calls made by third parties"). This remains true even if the calls are purportedly made on the defendant's behalf. *See Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) (calls "on behalf" of a defendant are not subject to direct liability).

Nor does Plaintiff adequately plead vicarious liability. The FAC contains no factual allegations concerning any agency relationship, authority, control, ratification, or other basis for holding ATYG responsible for the conduct of unidentified third parties. Plaintiff's naked assertion that certain unidentified callers "represent[ed]" ATYG is precisely the type of conclusory allegation that *Twombly* and *Iqbal* prohibit. *See, e.g., Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449-50 (9th Cir. 2018); *Rogers*, 2023 WL 2646468, at *6 (citing *Fabricant v. Elavon, Inc.*, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020)); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–6 (N.D. Cal. Mar. 28, 2018). Consequently, Plaintiff's FAC should also be dismissed on vicarious TCPA liability grounds. *See, e.g.*, *Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (rejecting unsupported "agency" allegations as "wholly conclusory" and dismissing based thereon under Rule 12(b)(6)).

## II. THE FAC SHOULD ALSO BE DISMISSED UNDER RULES 8 AND 10 FOR FAILING TO MEET BASIC FEDERAL PLEADINGS STANDARDS.

The FAC should also be dismissed because it fails to satisfy the pleading requirements of Rules 8 and 10. Although Plaintiff purports to assert claims under multiple provisions of the TCPA

(Sections 227(b) and (c)), he does not identify which factual allegations support which statutory theory. Instead, Plaintiff conflates these distinct causes of action, lumping together allegations concerning purported ATDS calls, artificial or prerecorded voice calls, and National DNC Registry violations without specifying which communications allegedly violated which provision of the statute. *See* Dkt. 15, ¶¶ 27-37. Worse, he does this across multiple phone numbers and callers without specifying which phone numbers purportedly received which TCPA violative communications (or even whether the subject phone numbers are cellular phones, which is critical to his ATDS allegations[1]). *Id.* ¶¶ 16-18, 38-48 & Ex. B. This is precisely the type of shotgun pleading that the Federal Rules prohibit.

Indeed, the Ninth Circuit recently explained that a shotgun pleading is one that "indiscriminately incorporates assertions from one count to another," thereby preventing the opposing party from reasonably preparing a response and obscuring the factual basis for the claims asserted. *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026). The court further emphasized that Rule 8 is infringed when a plaintiff fails to tie specific factual allegations to particular causes of action. *Id.* at 1290. That defect is evident here. Plaintiff simply incorporates every preceding allegation of the FAC in Counts I and II and asserts that all of the subject calls violated multiple sections of the TCPA. *See* Dkt. 15 ¶¶ 27, 38. Such pleading leaves ATYG (and the Court) to guess which communications support which theory of liability. Accordingly, the FAC violates Rules 8 and 10 and should be dismissed. *See Gibson*, 165 F.4th at 1288-90.

## III. <u>THE FAC SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLAUSIBLY ALLEGE USE OF AN ATDS OR AN ARTIFICIAL OR PRERECORDED VOICE.</u>

Plaintiff purports to assert violations of Section 227(b) under both Counts I and II. However,

[1] *See* 47 U.S.C. § 227(b)(iii) (restrictions on use of an ATDS to place calls to any telephone number assigned to a cellular service).

to state a claim under Section 227(b), Plaintiff must plead facts plausibly showing that the subject communications were made using either an ATDS or an artificial or prerecorded voice message. *See* 47 U.S.C. § 227(b). The FAC does neither.

As the Supreme Court and Ninth Circuit have made clear, not every dialing system qualifies as an ATDS. Rather, to fall within the TCPA's definition, a system "must randomly or sequentially generate ***telephone numbers***, not just any number." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1233 (9th Cir. 2022) (emphasis added); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021) ("a necessary feature of an autodialer . . . is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called."). Accordingly, a plaintiff cannot plausibly allege use of an ATDS merely by stating that some of the text messages were sent "on a random or sequential basis." Dkt. 15, ¶¶ 40, 42. Rather, he "must plead sufficient ***facts*** to allow the court to reasonably infer an ATDS was used; simply parroting the statutory language does not suffice." *Andersen v. Nexa Mortg., LLC*, 2024 WL 3762098, at *4 (C.D. Cal. Aug. 12, 2024) (emphasis added); *see also Cupp v. ABC-Amega, Inc.*, 2025 WL 2807312, at *2 (N.D. Cal. Oct. 2, 2025) (dismissing TCPA ATDS claim where the plaintiff "put forth no such facts, and thus [ ] failed to plausibly allege the calls were made from a device with ATDS capacity").

Plaintiff's allegations fall well short of these standards. For one, Plaintiff seemingly suggests that only an unknown number of text messages (not calls) were made using an ATDS and/or an artificial or prerecorded voice. [2] *See* Dkt. 15 ¶ 24 ("[S]ome of the Defendant's texts to Plaintiff were made using an ATDS and/or artificial or prerecorded voice."); *see also* ¶ 42 & Ex. D. He bases these allegations on the fact that some of the text messages were "generic, highly

[2] To the extent Plaintiff also contends that some of the subject calls were made using an ATDS, he fails to allege any factual allegations to support this contention. *See* Dkt. 15, ¶¶ 28-29.

repetitive (and often repeated), and bear every sign of having been sent (in the TCPA's language) 'on a random or sequential basis.'" *See id.*[3] However, repetitiveness alone is insufficient to demonstrate use of an ATDS, particularly where, as here, the plaintiff "also alleges facts that point the other direction." *See Allison v. Wells Fargo Bank, N.A.*, 2022 WL 10756885, at *2 (S.D. Cal. Oct. 18, 2022).

*Allison* is instructive here. In that case, the plaintiff alleged that the frequency and repetitiveness of the calls were indicative of ATDS use. *Id.* The court disagreed because the plaintiff had also alleged facts demonstrating that the defendant "obtained [the p]laintiff's phone number through their prior dealings with him and not through a random or sequential number generator." The same is true here. The messages identified in Exhibit D appear to be follow-up communications regarding a prior inquiry about business funding. *See* Dkt. 15, Ex. D. Thus, at most, the content of the messages suggest that Plaintiff was specifically targeted and repeatedly contacted at his same phone number(s) over a period of time, ***not*** that his telephone number was generated randomly or sequentially. A system that repeatedly contacts the same person is inconsistent with the notion that it is randomly generating telephone numbers. *See, e.g.*, *Allison*, 2022 WL 10756885, at *2; *Laccinole v. Gulf Coast Collection Bureau, Inc.*, 2023 WL 157719, at *3 (D.R.I. Jan. 11, 2023) (dismissing TCPA ATDS claim and stating, it "is not plausible that an act can be both randomly generated and specifically targeted at the same time.").

Further, Plaintiff's contention that six of the messages originated from Twilio and Telnyx, which he contends are "preferred carrier[s] for automated SMS & calls" (*see* Dkt. 15, Ex. D), does

[3] Plaintiff's contention misquotes the TCPA in any event. An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a). The Ninth Circuit has held that an ATDS is a device that "generate[s] and dial[s] random or sequential telephone numbers." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. 2022).

not alter the result. For one, it is entirely unclear why Plaintiff believes the messages originated from these carriers. For another, none of the "evidence" Plaintiff provides demonstrates that either platform generates random or sequential telephone numbers. *See* https://www.twilio.com/en-us/blog/insights/compliance/is-twilio-an-atds-html ("Can Twilio randomly or sequentially generate numbers for its customers to send text messages to? Nope. Can't do that.") (last visited July 14, 2026); *see also* https://learn.g2.com/what-is-an-auto-dialer ("Instead of dialing each number yourself, the software automatically calls contacts ***from a list*** and connects you only when someone picks up.") (emphasis added). Thus, even if these systems were used to contact Plaintiff (which ATYG does not admit), that alone does not support an inference that Plaintiff's phone number was randomly or sequentially generated.

To the extent Plaintiff's claims are predicated on artificial or prerecorded voice messages, his claims also fail. Courts routinely dismiss complaints that merely label a call as "artificial" or "prerecorded" without facts supporting that conclusion, as Plaintiff does here. *See Rahimian v. Adriano*, 2022 WL 798371, at *2 (D. Nev. Mar. 16, 2022) (dismissing where, as here, the plaintiff "d[id] not allege any circumstances that could support an inference that the calls were placed with ... an artificial or prerecorded voice.") (internal quotations omitted); *Hodge v. Travel + Leisure Co.*, 2025 WL 327741, at *2 (N.D. Cal. Jan. 29, 2025) (ruling similarly). Further, to the extent Plaintiff contends that some of the text messages he purportedly received violate the prohibition on artificial or prerecorded voice calls (*see* Dkt. 15, ¶ 24), this argument is precluded by binding precedent. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1164 (9th Cir. 2023) ("Because ordinary meaning and statutory context show the term 'voice' in 47 U.S.C. § 227(b)(1)(A) clearly excludes a symbolic definition, [the defendant's] text messages to [the plaintiff] could not have violated the prohibition on 'prerecorded voices' in that section.").

In sum, because Plaintiff alleges no facts permitting a reasonable inference that any challenged communication was made using an ATDS or an artificial or prerecorded voice, his Section 227(b) claims fail as a matter of law and should be dismissed.

## IV. COUNT I SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLAUSIBLY ALLEGE RECEIPT OF A "TELEPHONE SOLICITATION" CALL.

Count I should also be dismissed because the FAC contains no plausible allegations establishing that any of the challenged communications constituted a telephone solicitation.

The term "telephone solicitation" is specifically defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). However, a telephone solicitation expressly "does not include a call or message [t]o any person with that person's express invitation or permission, [or] [t]o any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(5) & (f)(15) (emphasis added). While Plaintiff contends he is not a customer of ATYG and did not give his "consent" or "request" the subject communications (*see* Dkt. 15 ¶¶ 18-20), he notably fails to plead facts to support the lack of an inquiry regarding ATYG's services, which would also satisfy the established business relationship exemption. *See* 47 C.F.R. § 64.1200(f)(5) (defining "established business relationship" to include "a voluntary two-way communication between a person or entity and a residential subscriber… on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call…"). Absent such an allegation, he has not plausibly alleged he received a "telephone solicitation" under the TCPA's NDNCR provision. *See Gillam v. Reliance First Cap., LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing NDNCR claim for failure to plead lack of prior express invitation or permission or established business relationship).

*Gillam* is instructive. There, the plaintiff alleged a NDNCR claim, but failed to allege that he did not previously invite or permit the defendant to call him and, critically for purposes here, that he and the defendant lacked an "established business relationship" prior to the receipt of any calls. *Id*. The same deficiency exists here.

Moreover, the content of several messages Plaintiff purportedly received suggest the existence of an established business relationship. *See, e.g.*, Dkt. 15, Ex. D ("I got your file from a broker last year."; *Id*. ("We had you approved for business funding in the past…"). Thus, Count I should be dismissed under Rule 12(b)(6) on this basis, as well.

## V. COUNT I SHOULD ALSO BE DISMISSED TO THE EXTENT IT RELIES UPON TEXT MESSAGES TO SUPPORT A CLAIM UNDER SECTION 227(C) OF THE TCPA BECAUSE TEXT MESSAGES ARE NOT CALLS UNDER THAT SECTION.

To the extent Count I relies on text messages to support purported violations of Section 227(c) of the TCPA, those claims fail as a matter of law. Section 227(c) creates a private right of action only for a person who has "received more than one ***telephone call*** within any 12-month period" in violation of the DNC regulations. 47 U.S.C. § 227(c)(5) (emphasis added). As several courts, including the Seventh Circuit, have observed, Section 227(c) "only creates a private right of action for the receipt of more than one 'telephone call' within a 12-month period. It doesn't mention telephone messages, nor does it use the more encompassing term, telephone solicitation." *Steidinger v. Blackstone Med. Servs.*, 2026 WL 2028517, at *2 (7th Cir. July 14, 2026); *see also Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1272-1273 (N.D. Fla. 2025). These courts and others have found that "[t]he statutory text . . . is clear that only telephone calls are actionable under § 227(c)(5), not text messages." *Radvansky v. 1-800-FLOWERS.COM, Inc.,* 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) (dismissing on this basis).[4]

[4] *See also Stockdale v. Skymount Prop. Grp., LLC*, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026); *El-Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct.

Moreover, as the Supreme Court recently reiterated, "[e]very statute's meaning is ***fixed at the time of enactment***." *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 400 (2024) (emphasis added). Thus, federal courts "must interpret what Congress wrote" when Section 227(c) was enacted in 1991, and they cannot rewrite it to update it for modern technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405, 409 (2021). Further, it is axiomatic that if a statute's language is plain and unambiguous—like the TCPA's text certainly is—courts need not analyze it further and "must enforce it according to its terms." *King v. Burwell,* 135 S.Ct. 2480, 2489 (2015). *See also Stockdale*, 2026 WL 591842, at *4 ("***Where, as here, the language of the statute is clear, the Court's analysis stops***.") (citing *U.S. v. Choice,* 201 F.3d 837, 840 (6th Cir. 2000) (emphasis added)).

Courts applying these core principles have looked to the plain meaning of the term "telephone call" as of the date of enactment and concluded that texts are not covered by Section 227(c) because texts did not even exist yet. *Steidinger*, 2026 WL 2028517, at *2 (citing *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016) (noting that the first text message was sent in December 1992)); *see also Davis*, 797 F.Supp.3d at 1273 (ruling similarly); *Stockdale*, 2026 WL 591842, at *3 (same). As the Seventh Circuit recently held, the "ordinary public meaning of telephone call at the time of the TCPA's enactment, as well as the context provided by surrounding provisions of § 227," make clear that texts are not calls under Section 227(c). *Steidinger*, 2026 WL 2028517, at *2.

In response to this Motion, Plaintiff may invite this Court to expand the plain language of Section 227(c) to cover <u>all</u> communications to or from a phone. The Court should decline this

---

24, 2025); *James v. Smarter Contact, Inc.,* 2026 WL 879244, at *3-5 (M.D. Fla. Mar. 31, 2026); *Irvin v. Sonic Indust. Serv., LLC*, 2026 WL 1098403, at *2–5 (N.D. Ga. Apr. 20, 2026); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2-4 (S.D. Ind. Mar. 26, 2026); *Richards v. Shein Distrib. Corp.*, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026) (each ruling similarly and dismissing Section 227(c) claims under Rule 12(b)(6) on this basis).

invitation, as doing so would violate the settled statutory construction principles discussed above and stretch the statute far beyond Congress' express limits. *See Radvansky,* 2026 WL 456919 at *4 (rejecting similar invitation). Indeed, a comprehensive review of the statute's history, plain language, and overall structure confirms that Congress did not employ language suggesting the term "telephone call" used in Section 227(c) would serve as a catchall for any present or future phone technology.

*First*, Congress has amended the TCPA multiple times since its enactment but has never amended Section 227(c) to include texts. In 2018, for example, Congress amended the statute to address text messages in connection with Caller ID requirements, which fall under a different provision of the statute. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified at 47 U.S.C. § 227(e)). In doing so, Congress expressly distinguished between "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A), (B). These amendments demonstrate three critical points: (1) Congress knows how to differentiate between technologies; (2) it did not just assume that texts were already covered by the TCPA's reference to "telephone calls" (or else there would have been no need to amend Section 227(e) to include them); and (3) it did not intend every provision of the TCPA (which function independently from each other) to sweep in texts. *See Radvansky*, 2026 WL 456919, at *4; *El-Sayed,* 2025 WL 2997759, at *2 (noting the fact that the term "text message appears elsewhere in the TCPA and related amendments "confirms Congress understood the pertinent distinction and legislated mindful of the distinction.").[5] Expanding "telephone call" in Section 227(c) to encompass every form of communication transmitted to or from a phone would not only depart from the statute's plain and unambiguous text, which is dispositive, but it also "would likely more than double the number

[5] Furthermore, numerous courts have found voice calls and texts differ "in several important ways" including that texts, unlike calls, "do[] not require that a person pick up a call, listen to a voice, or tie up their phone's line." *Fashion Nova*, 2026 WL 847568, at *3. *See also Stockdale,* 2026 WL 591842, at *4; *James*, 2026 WL 879244, at *3–5 (ruling similarly).

of private causes of action authorized by the TCPA." *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026).

*Second*, Congress defined "telephone solicitation" in 47 U.S.C. § 227(a)(4) to include "the initiation of a telephone call or message." Though this separate section refers to artificial or prerecorded voice messages, it does not refer to "text messages," and Congress' deliberate use of "telephone call or message" in a "neighboring provision" merely highlights that the term "telephone call" as used in Section 227(c) does not encompass all "messages." *Steidinger*, 2026 WL 2028517, at *2-3; *Davis*, 797 F. Supp. 3d at 1274. *See also Radvansky*, 2026 WL 456919, at *4 ("construing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage"); *Irvin*, 2026 WL 1098403, at *4 (ruling similarly and declining to apply Section 227(a)(4) to 227(c)).

Moreover, the Supreme Court has held that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 558 U.S. 233, 249 (2010) (quoting *Nken v. Holder,* 556 U.S. 418, 430 (2009)). This undermines any argument texts are "telephone calls" under the plain language of Section 227(c). Rather, Congress' omission of texts from the scope of Section 227(c) remains intentional and deliberate.

*Third*, Congress has consistently drawn technology-specific distinctions within the TCPA. For example, although a fax transmission could be described colloquially as a "call" to the extent it is a communication transmitted by a telephone, Congress subjected fax advertisements to a separate regulatory scheme under Section 227(b), not Section 227(c), because faxes raise distinct concerns (*e.g.*, the consumption of paper/toner). *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 743 (6th Cir. 2013) (citing S. Rep. No. 102-178, at 4–5

(1991)). The same pattern appears throughout the TCPA's text, which differentiates among autodialed calls, prerecorded voice messages, live calls, and faxes, etc., each of which is assigned different statutory treatment. *See El-Sayed*, 2025 WL 2997759, at *2.

Plaintiff may also cite to other decisions interpreting whether a text is a "call" under Section 227(b) to suggest that texts also qualify as a "telephone call" under Section 227(c).[6] That would be unavailing. Sections 227(b) and (c) use the word "call" in different contexts. Indeed, "Section 227(b)(1)(A) [of the TCPA] deals with 'a broader prohibition on 'any call'" and not "the statutory term 'telephone call' at issue here" with respect to DNC claims under Section 227(c). *See James,* 2026 WL 879244, at *3-5 (noting that courts relying on prior interpretations of Section 227(b) improperly focus on the verb "call" used in Section 227(b) and did not consider the definition of "telephone" whereas "[i]n Section 227(c)(5), 'call' is used as a noun") (citing *Davis*, 797 F. Supp. 3d at 1273); *see also Steidinger*, 2026 WL 2028517, at *2 (concluding that, "in 1991, a 'telephone call' referred to communication via sound").

All told, while Plaintiff may believe that there are compelling reasons for the Court to expand Section 227(c) of the TCPA to reach the realities of today's communication technologies, only Congress can do so.

## VI. <u>PLAINTIFF'S CLAIMS FOR TREBLE DAMAGES SHOULD ALSO BE DISMISSED BECAUSE THE FAC FAILS TO PLAUSIBLY ALLEGE A KNOWING OR WILLFUL VIOLATION OF THE TCPA.</u>

Among other remedies, Plaintiff seeks statutory damages for purported "willful" violations of the TCPA. Dkt. 15 ¶¶ 27-37, 46, 47. His request should be dismissed because Plaintiff has not alleged facts supporting a plausible inference that ATYG acted knowingly or willfully. The Ninth

[6] *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (using the definition of the verb "call" from the 1993 Webster's Dictionary, and a definition from a 1989 dictionary largely mirroring other definitions of "call" as a verb).

Circuit has clarified that this standard requires more than merely intentional conduct. Rather, "willfully" requires awareness that one's conduct violates the law, while "knowingly" requires awareness of the facts constituting the violation. *True Health Chiropractic, Inc. v. McKesson Corp.*, 2023 WL 7015279, at *3 (9th Cir. Oct. 25, 2023), *rev'd on other grounds, McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025).

Plaintiff alleges no such facts here. The FAC contains only the conclusory assertion that Defendant "knowingly and/or willfully" violated the TCPA. But "[a] conclusory allegation that [a defendant's] actions were willful is nothing more than a legal conclusion couched as a factual allegation." *Lucas v. Monitronics Int'l, Inc.*, 2020 WL 6440255, at *2 n.3 (S.D. Ohio Nov. 3, 2020). Courts routinely reject requests for treble damages premised on such bare allegations. *See, e.g., Bristow v. Am. Nat'l Ins. Co.*, 2021 WL 2201171, at *2 (E.D. Mich. June 1, 2021) ("something more than a mere violation is required in order to elevate it to a willful or knowing one"); *Doyle v. JTT Funding, Inc.*, 2019 WL 13037025, at *12 (C.D. Cal. Dec. 2, 2019) (declining to award treble damages absent a sufficient factual basis).

Indeed, Plaintiff has not plausibly alleged any TCPA violation in the first instance. The FAC contains no facts showing that any of the calls or texts were made using an ATDS or artificial or prerecorded voice, no facts establishing that ATYG was responsible for any of the calls or texts, or that any of the calls or texts constituted an actionable telephone solicitation. Absent factual allegations establishing an underlying TCPA violation, Plaintiff necessarily cannot plausibly allege that ATYG knowingly or willfully committed such a violation. Consequently, the FAC should be dismissed on this additional basis.

## CONCLUSION

For all the reasons above, Plaintiffs' FAC should be dismissed in its entirety and with prejudice under Rule 12(b)(6).

DATED this 15th day of July, 2026.

MANATT, PHELPS & PHILLIPS LLP

/s/ Alexandra Krasovec
Alexandra Krasovec (pro hac vice)

Attorneys for Defendant ATYG, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Isaac J. Eddington
4609 West 65th South
Idaho Falls, ID 83402
Telephone: (208) 534-7865
ieddington@rbm.us

/s/ Alexandra N. Krasovec
Alexandra N. Krasovec