Isaac J. Eddington (ISB #12671)
Riverbend Management, Inc.
4609 West 65th South
Idaho Falls, ID 83402
Telephone: (208) 534-7865
ieddington@rbm.us

*Attorney for Plaintiff Matthew Vandersloot*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE STATE OF IDAHO**

| | |
|---|---|
| MATTHEW VANDERSLOOT,<br><br>Plaintiff,<br><br>v.<br><br>ATYG, LLC,<br><br>Defendant. | Civil Case No. 4:26-cv-00275-DCN<br><br>Judge David C. Nye<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT (ECF #17).** |

## I. INTRODUCTION

Plaintiff Matthew Vandersloot, in his Amended Complaint (ECF #15), has more than alleged sufficient facts to make out a claim under the Telephone Consumer Protection Act ("TCPA" at 47 U.S.C. §227). Vandersloot has sued Defendant ATYG, LLC ("ATYG") for making more than one hundred unauthorized calls and texts to him in violation of the TCPA. His Amended Complaint (with Exhibits) breaks out each contact by date and originating phone number, provides evidence concerning his repeated requests to stop being called, furnishes specific information to link these contacts to ATYG, and cites language from text messages to show that these messages were sent with prohibited "automated telephone dialing systems." ATYG is

therefore wrong in contending that all of this is not enough to make out a TCPA claim at the pleadings stage of the case, and its Motion to Dismiss (ECF #17) should be accordingly denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Vandersloot sued ATYG in Idaho state court, and ATYG appeared and removed the matter to federal court. ATYG moved to dismiss (ECF #14), Vandersloot filed an Amended Complaint (ECF #15), and ATYG now moves, again, to dismiss (ECF #17).

ATYG "disputes that Plaintiff should be permitted any further amendment," because "the grounds for ATYG's Motion [to Dismiss], including the deficiencies Plaintiff attempts to address in his FAC, were provided to Plaintiff's counsel prior to filing the Motion." *See* ECF #17-1 at 3. Vandersloot does not of course concede that further amendment will be needed (since the Motion to Dismiss should be denied), but he never forfeited the right to seek such if circumstances so warrant. Briefly, (and as supported by the email exchanges attached collectively as Exhibit A), ATYG's counsel (in a phone conversation), asked Vandersloot's counsel if he would amend his initial complaint to remove an Idaho state law-claim, and Vandersloot's counsel both agreed to do so and asked if there were other grounds on which ATYG intended to seek dismissal. ATYG's counsel responded with a dense email of numerous alleged deficiencies in Vandersloot's pleading, and Vandersloot's counsel pointed out that as it would seem impossible to amend the complaint so as to satisfy ATYG's objections, a motion to dismiss would be in order. After a further exchange of emails, Vandersloot's counsel emailed an amended complaint he had filed in another case, and asked if revising his pleading to (roughly) track that amended complaint would satisfy ATYG, but ATYG's counsel indicated that it would still move to dismiss. *See* Exhibit A.

Given the foregoing exchange, Vandersloot let ATYG file the motion to dismiss (ECF #14) that it obviously intended to file regardless, and then amended accordingly (ECF #15). Nothing

in this procedural history indicates bad faith or a lack of compliance with any duty of counsel so as to preclude further amendment on Vandersloot's part, should such amendment be appropriate.

## III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted). "In light of [the Supreme Court's decisions in] *Twombly* and *Iqbal,* the Ninth Circuit summarized the governing standard as follows: 'In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.'" *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corporation,* No. 1:17-cv-00519, 2018 WL 3097014, at *2 (D. Idaho, June 22, 2018), *citing Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). But of course, a pleading need not meet a summary judgment standard at the motion to dismiss stage. *See Deane v. Pacific Financial Group,* No. C19-722, 2020 WL 2473547, at *2 (W.D. Wash, May 13, 2020) ("The Court finds the standard to which Plaintiff wants to hold Defendants' proposed [counter]claims goes beyond *Iqbal/Twombly* to almost summary judgment levels. Plaintiff attempts to challenge the factual basis of the new claims as *proof* of the cause of action—that is not the standard. The issue is whether Defendants' claims are facially plausible…") (emphasis in original).

## IV. ARGUMENT

### A. Vandersloot Has Specifically Pled That ATYG Contacted Him Multiple Times.

ATYG argues that Vandersloot has failed to adequately allege "direct" or "vicarious" liability on ATYG's part. *See* ECF #17-1 at 5-8. This is not true; Vandersloot has specifically alleged one hundred and thirty-seven contacts from ATYG, made (in some instances) under

alternate business names and/or from affiliated business entities (the most prominent being Steady Capital Solutions). *See* ECF #15 at ¶¶20-21. Vandersloot's Exhibit A lists these contacts by date and originating telephone number (ECF #15-1), and his Exhibit C gives reasons (broken out by call) for attributing those contacts to ATYG. *See* ECF #15-3. Specifically, three distinct callers identified Steady Capital Solutions as an alternative name for ATYG (as per the first entry in the Complaint's Exhibit C), and numerous other calls led to emails from Steady Capital. These contacts are pled in detail, by caller name and date, and lead to no other conclusion than that Steady Capital is an alternate name (if not a related entity) of ATYG, and that the 137 contacts at issue were made by ATYG or at ATYG's direction.

ATYG distorts the federal pleading standard by arguing that Vandersloot should have pled something more, that (for example) the specific phone numbers were owned or controlled by ATYG or that the callers were themselves ATYG employees. *See* ECF #17-1 at 6. But Vandersloot has pled every alleged TCPA violating-contact by date and phone number (ECF #15-1), he has alleged that Steady Capital Solutions is an alternative name for ATYG (ECF #15 at ¶20), and he has described the contacts that led to correspondence with Steady Capital *and* the contacts in which his callers admitted that Steady Capital was an alternative name for ATYG. (ECF #15-3).

A TCPA plaintiff can hardly plead more; after all, Vandersloot cannot (at the case's beginning) know whether his callers were employees or third-party contractors of ATYG, or whether the phone numbers from which he received the calls were owned or controlled by ATYG directly or indirectly. Vandersloot likewise cannot know, yet, whether Steady Capital Solutions is simply an alternative name for ATYG (as he was told by three separate callers) or a separate entity which makes calls on ATYG's behalf. Thus, ATYG's demand that a TCPA plaintiff plead,

in the complaint, what a plaintiff cannot possibly know before discovery would cause virtually any TCPA complaint to be dismissed (which seems to be the point of the demand).

Ninth Circuit district courts have never required what ATYG demands in the way of pleading for "direct" or "vicarious" liability. One such district court denied a similar motion to dismiss when the plaintiff "alleges that … [the defendant] made multiple calls to his cell phone …that callers told him that they were acting on behalf of, or were part of [the defendant] …[and when the plaintiff] includes supporting allegations that allow the court to draw the reasonable inference that … [the ] defendant controlled the content of the calls he received." *Hollis v. Exp. Realty LLC,* No. C25-0822JLR, *3, 2025 WL 2711424 (W.D. Wash., Sep. 23, 2025) (denying motion to dismiss on direct liability grounds). The *Hollis* Court likewise denied the defendant's motion to dismiss regarding vicarious liability, holding that "[a] plaintiff need not separately plead a particular theory of vicarious TCPA liability to proceed on that theory." *Id.* at *3. The *Hollis* Court held that the plaintiff's allegation that the defendant "is aware of and has authorized … or caused its agent['s] ….illegal telephone calls was sufficient." *Id.* at *4.

And *Hollis* is typical of Ninth Circuit district court rulings on the subject. For example, in *Workman v. Carguard Administration, Inc.,* the court rejected a motion to dismiss when a putative class plaintiff alleged receiving a call and following pre-recorded prompts and two transfers between individuals to be offered a contract that would be administered (if accepted) by the defendant. *See Workman,* No. CV-23-00961 at *2, 2024 WL 249160 (D. Ariz., Jan. 23, 2024). The *Workman* Court rejected the defendant's argument that the individuals on the call were not direct employees, stating that "[s]uch arguments … are not appropriate for the Court to consider at this stage …. ***In ruling on a motion to dismiss, the Court merely considers whether Plaintiff's claim is plausible***." *Id.* at *3 (emphasis added). The *Workman Court* also found that the plaintiff

"sufficiently alleges, in the alternative, a plausible claim for vicarious liability" by stating that the defendant "directed that the calls be made" and had "contracted with numerous agents." *Id.* at *3. Vandersloot, again, has more than met the standard set forth in that case.[1]

Against the foregoing recent, relevant, case law from within the Ninth Circuit, ATYG cites to a welter of mostly out-of-circuit case law without reference to specific facts. *See* ECF #17-1 at 8. The only Ninth Circuit (appellate) case cited is *Jones v. Royal Admin. Servs., Inc.,* 887 F.3d 443 (9th Cir. 2018), which affirmed a summary judgment ruling, and is inapplicable at the motion to dismiss stage. (ECF #17-1 at 8). Several of the remaining cases involve the potential liability of general carriers for phone calls sent over their platforms, an issue not relevant here. ATYG cites, for example, *Sheski v. Shopify (USA) Inc.,* No. 19-cv-06858, 2020 WL 274421 (N.D. Cal., May 13, 2020), which involved Shopify's potential liability, *Meeks v. Buffalo Wild Wings, Inc.,* 17-cv-07129, 2018 WL 1524067 (N.D. Cal., March 28, 2018) (concerning Yelp's involvement), and *Rogers v. Assurance IQ,* involving a potential class action against both an insurance company and a platform/provider in which the respective direct and potential liability theories were unsupported. *See* No. 2:21-cv-00823, 2023 WL 2646468 (W.D. Wash., March 27, 2023).[2] None

[1] *See also Reisman v. Gen Digital Incorporated,* No. CV-25-01652 at *2-3, 2025 WL 2419960 (D. Ariz., August 21, 2025) (denying motion to dismiss on both direct and vicarious liability even when plaintiff had alleged only nine anonymous texts with hyperlinks to a website containing an advertisement for the defendant's products); *Ragsdale v. Leadpoint, Inc.,* No. 2:24-cv-04542 at *2-3, 2024 WL 5424125 (C.D. Cal, Nov. 5, 2024) (denying motion to dismiss on direct or vicarious liability grounds even though plaintiff received only five text messages with links to different websites and none of the messages identified defendant as the sender, when two of the websites were owned by defendant and "it is unclear what other entity would have benefited from including such links in its outbound marketing."); *Charman v. Leadsmarket.com, LLC,* No. 24-cv-00695 at *2, 2025 WL 1883558 (S.D. Cal., July 7, 2025) (rejecting a motion to dismiss on direct or vicarious liability grounds when the plaintiff received text messages with links to subprime loan solicitations on websites allegedly owned by defendant.)

[2] ATYG also cites *Naiman v. Freedom Forever, LLC,* No. 19-cv-00256, 2019 WL 1790471 (N.D. Cal., April 24, 2019) (ECF #17-1 at 8), but in that case it was pointed out that the complaint "merely parrots the language of the TCPA without providing any facts, and that "Plaintiff fails to

of those fact patterns apply to this case, and none of those authorities are relevant in light of the recent, on-point cases which Vandersloot cites above. (Vandersloot would also point out that in several of ATYG's cited authorities (*Naiman, Rogers,* and *Sheski*), the plaintiff was given leave to amend).

Simply put, Vandersloot has alleged that ATYG made 137 calls or texts to him—listed in his Complaint's Exhibit A by date and originating number—and described (in his Exhibit C) how these calls led to emails from Steady Capital Solutions, a name which three separate callers told him was synonymous with ATYG. Vandersloot has therefore alleged all in the way of direct or (in the alternative) vicarious liability that he reasonably can, he has more than alleged a 'plausibly suggestive' claim, and ATYG's Motion to Dismiss should be rejected on this point.

**B. <u>Vandersloot's Amended Complaint More Than Meets Federal Pleading Standards.</u>**

ATYG rather briefly asserts that Vandersloot's Amended Complaint should be dismissed as a vaguely written "shotgun pleading," but it is ATYG's argument that should be rejected as too vague. *See* ECF #17-1 at 8-9. ATYG claims, broadly, that "Plaintiff conflates … distinct causes of action, lumping together allegations concerning purported ATDS calls, artificial or prerecorded voice calls, and National DNC Registry violations without specifying which communications allegedly violated which provision of the statute." (ECF #17-1 at 9).

Nothing could be less true. Vandersloot's Amended Complaint comprises two distinct causes of action under the TCPA. The Complaint's Count I describes how ATYG caused one-hundred and thirty-seven calls and texts to be made to Vandersloot in violation of the TCPA, in that Vandersloot had both put his name on the National Do-Not Call Registry and asked,

---

identify which of the three named defendants actually enabled an ATDS to call Plaintiff's cell phone." *Id.* at *2.

repeatedly, not to be contacted. *See* ECF #15 at ¶¶27-37. The Complaint's Exhibit A specifically lists each of these contacts by date and originating number, Exhibit B shows Vandersloot's placement on the National Do-Not Call Registry, and Exhibit C cites specific language from these contacts linking them to ATYG. *See* ECF ##15-1, 2, and 3 (respectively). A more precise detailed, cause of action would be hard to imagine.

And, *contra* ATYG's assertions that Vandersloot's Amended Complaint "conflates … purported ATDS [automated telephone dialing system] calls," his cause of action relating to such contacts is clearly set forth in the Complaint's Count II. *See* ECF #15 at ¶¶38-48. Twenty-four such contacts are specifically alleged (these being a subset of the 137 contacts alleged in Count I, and therefore a predicate for additional damages), and these twenty-four contacts are listed in the Complaint's Exhibit D. *See* ECF #15-4.

Vandersloot is therefore at a loss to know how his specific, two-Count, seven Exhibit Amended Complaint can possibly be considered a "shotgun pleading." ATYG cites, for authority, one Ninth Circuit decision where a civil rights complaint against "three governmental entities, four possessions, and one police detective" did not make clear whether any or "all of the Defendants violated[d] Plaintiffs' constitutional rights with respect to each of the five subclaims." *See Gibson v. City of Portland,* 165 F.4th 1265, 1292 (9th Cir. 2026), cited at ECF #17-1 at 9. But Vandersloot's Amended Complaint does not, by any stretch, bear the infirmities in the pleading at issue in *Gibson,* being a focused two-count complaint against a single defendant. ATYG's "shotgun pleading" argument should therefore be rejected.

### C. <u>The Amended Complaint Plausibly and Specifically Alleges That ATYG Used An Automatic Telephone Dialing System for Twenty-Four Specific Texts.</u>

The TCPA prohibits calls and texts made with an automatic telephone dialing system ("ATDS") (*see* 47 U.S.C. § 227(a)(1)(A) & (B), and (b)(1)(A)); Vandersloot (in Count II of his

Amended Complaint) alleges that twenty-four of ATYG's texts were so made. *See* Am. Compl. (ECF #15) at ¶¶ 24; 38-47. (For reference, the TCPA defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.") *See* 47 U.S.C. § 227(a)(1).)

Vandersloot has alleged ATYG's use of ATDS with specificity, as the Amended Complaint's Exhibit D lists each of the twenty-four texts allegedly sent by ATDS by time and originating number. *See* ECF #15-4 (Am. Compl.'s Exhibit D). Exhibit D also provides samples of the texts in question, showing language that is (to say the least) quite repetitive. The texts continuously repeat language such as:

> Hey, I didn't hear back from you. We work quick and will get you numbers same day did you get my email from peter?

Which was repeated six times. ECF #15-4 at 1. Or:

> Hey, I hope you enjoyed your weekend! We had you approved for business funding in the past and we have doing the best deals this month! BIG amounts, LONG terms and LOW rates! How much could your business use today?

Repeated four times. *Id.* at 2.

In fact, the Amended Complaint's Exhibit D (ECF #15-4) lists multiple repeated texts, by group, with repetitively similar language. It is very difficult to believe that these texts were anything other than automatically generated, and it is impossible to believe, as ATYG contends, that these texts were not automatically generated *as a matter of law.*

And Exhibit D also alleges that many of these contacts were made on carriers (Twilio and Telnyx) that have a reputation for automatic messaging. *See* ECF #15-5 (the Complaint's Exhibit E) (Screenshot of Twilio's website boasting of ability to help clients with "programmable messaging,"), (ECF #15-6) (Exhibit F) (Screenshot of Telnyx's website saying "learn what an autodialer is and how it can improve communication efficiency.") When text messages are sent

over a carrier that openly references autodialing, it is (at the least) permissible to infer that the messages were in fact sent via an automated dialing system. And ATYG's responsive contention (ECF #17-1 at 11) that "none of the "evidence" Plaintiff provides demonstrates that either platform generates random or sequential telephone numbers" is a summary judgment argument; Vandersloot, at this time, has certainly "plausibly suggested" use of an automated dialing system.

The relevant case law bears this out. "To survive a motion under Rule 12(b)(6), a plaintiff asserting a TCPA claim ***need not somehow have inside knowledge of a defendant's operations and equipment***; rather, she merely must proffer factual allegations that support a reasonable inference that an ATDS was used." *Hale v. Natera,* No. 19-cv-01402, 2019 WL 4059851, at *2 (N.D. Cal., Aug. 28, 2019) (denying motion to dismiss) (emphasis added). Or, as another court expressed the same point, ***"[b]ecause text message recipients have no way to deduce the specific type of dialing system a sender uses without discovery, courts allow TCPA claims to proceed beyond the pleading stage where plaintiff's indirect allegations about the messages raise an inference that an ATDS was utilized… . Such indirect allegations include the content of the message, the context in which it was received, and the existence of similar messages***." *Holt v. Facebook, Inc.* 240 F. Supp. 3d 1021 at 1026, 1027 (N.D. Cal. 2017) (internal citations omitted, emphasis added). The *Holt* Court denied a defendant's motion to dismiss because "[a]ll three … factors imply the existence of an ATDS. ,…The content of the messages … is generic and impersonal… .[The plaintiff] had no pre-existing relationship with Facebook, and there are no allegations that any third party took any affirmative action that prompted Facebook to contact [the plaintiff]." *Id.* at 1031. *See also Szumilas v. CBE Group Incorporated,* No. CV 15-08595, 2016 WL 11742895, at *5 (C.D. Cal., August 17, 2016) (denying motion to dismiss because ***"[t]he combination of (1) the high volume of phone calls Plaintiff allegedly received, (2) the content***

***of the phone call Plaintiff answered,*** and (3) the claims of the existence of similar phone calls made to other people, allow the Court to make a context-specific determination that Plaintiff raises a plausible inference that an automatic dialer was used.") (emphasis added).[3] Given these decisions, Vandersloot's allegations more than meet the required pleading standard for TCPA 'ATDS' claims.

ATYG's cited case law (ECF #17-1 at 10-11) does not prove the opposite, as that case law concerned situations in which the defendant concededly did not use an automatic dialing system. For example, the U.S. Supreme Court did hold in *Facebook, Inc. v. Duguid* that "a necessary feature of an autodialer is the capacity to use a random or sequential number generator," but whether such a generator was used in this case will be determined in discovery. *See* 592 U.S. 395, 409 (2021). Likewise, the Ninth Circuit's decision in *Borden v. eFinancial, LLC* merely affirmed the dismissal of a class action where it was established that the defendant had not used a "sequential number generator." *See Borden,* 53 4th 1230, 1235 (9th Cir. 2022) (determining that the TCPA is not violated when "an autodialer can generate a non-telephone number to determine the order in which to call telephone numbers from a premade list."). ATYG otherwise cites to *Cupp v. ABC-Amega, Inc.,* but in that case the plaintiff positively pled that the defendant's calls were made by individuals rather than by an automatic dialing system. *See Cupp,* No. 24-cv-073888, 2025 WL

---

[3] *See also Erdman v. Ocwen Financial Corp.,* No. EDCV 15-2478, 2016 WL 11744288, at *3 (C.D. Cal, June 29, 2016) (denying motion to dismiss because "Plaintiff has presented sufficient evidence to suggest plausibly that Defendant used an ATDS. The frequency and number of the calls, as well as the 'dead air' which greeted Plaintiff when he answered, suggest Defendant used ATDS."); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.* No. 16-cv-05486, 2017 WL 733123, at *8 (N.D. Cal., Feb. 24, 2017) (denying a motion to dismiss ATDS claims because "[a]t the pleading stage of the case, a plaintiff need only allege facts supporting a *plausible* inference that the defendant is responsible for the robocalls that the plaintiff allegedly received on its cellular telephones… .[The plaintiff] has alleged detailed facts from which a plausible inference can be drawn that…[the defendant] was responsible for the robocalls made to …[the plaintiff]. That is all that is required at this stage of the case.").

2807312, at *2 (N.D. Cal., Oct. 2, 2025) (stating that the plaintiff "alleged initially that he talked to a lady who was making phone collections from a controller's office …and that he received a call from someone claiming to be VP of ABC").

ATYG makes much (ECF #17-1, at 10-11) of *Allison v. Wells Fargo Bank, N.A.,* but in that case the caller (Wells Fargo) was—by the plaintiff's own allegations—trying to collect a specific debt, and so the calls could not be automatically generated. *See Allison,* No. 22-cv-0510 at *2-3, 2022 WL 10756885 (S.D. Cal, Oct. 18, 2022). *See also Laccinole v. Gulf Coast Collection Bureau,* C.A. No. 22-223 at *1, 2023 WL 157719 (D.R.I., Jan. 11, 2023) (granting motion to dismiss where plaintiff "alleges that he began receiving unidentified calls … to collect a debt presumably owed by the person who previously used the number.") No such facts are present here.[4]

In short, Vandersloot has more than plausibly alleged sufficient detail for his ATDS claim (Count II of his Amended Complaint) to survive a motion to dismiss. He has specifically listed twenty-four text messages, cited generic, repetitive language from those messages, and alleged that they were sent over carriers that openly proclaim their auto-dialing or 'progressive messaging" capabilities. ATYG's Motion to Dismiss should accordingly be denied on this point.

### D. Vandersloot Has More Than Plausibly Alleged That He Received "Telephone Solicitations."

[4] Moreover, ATYG's statement that Vandersloot's claims fail "[t]o the extent …[those claims] are predicated on artificial or prerecorded voice messages," is irrelevant as his claims are not so predicated. *See* ECF #17-1 at 12. The TCPA prohibits the use of calls made with either an "automatic telephone dialing system ***or*** an artificial or prerecorded voice," and Count II of Vandersloot's Amended Complaint rests on use of an automatic telephone dialing system. *See* 47 U.S.C. § 227 (b)(1)(A) (emphasis added). Hence, ATYG's argument and cited precedent regarding "artificial or prerecorded voice" case law has no bearing here. *See* ECF #17-1 at 12.

ATYG argues, wrongly, that Vandersloot did not allege the receipt of "telephone solicitations" within the meaning of the TCPA. *See* ECF #17-1 at 13-14. This is puzzling, as Vandersloot specifically alleges receiving 137 calls or texts from ATYG which he did not ask for and never consented to, and as regards which he made *fifty-nine* "stop calling me" communications. *See* ECF #15 at ¶¶18-25. That these communications were sales solicitations is not in doubt, as Vandersloot's Exhibit D lists numerous text messages with language like "Could your business still use 100k payback 115k?" *See* ECF # 15-4.

ATYG is therefore reduced to arguing that Vandersloot has not specifically pled that he lacked an "established business relationship" with ATYG as supposedly required by the Federal Communications Commission's regulations. *See* ECF #17-1 at 13. To respond: first, as Vandersloot has specifically alleged that he never asked ATYG to contact him, never consented to the contacts, and asked fifty-nine times for the contacts to stop, he has rather thoroughly alleged the lack of any "established business relationship" between himself and ATYG. Second, the very regulations which ATYG cites state that a "sender that receives a request not to send future unsolicited advertisements … must honor that request. …***The recipient's opt-out request terminates the established business relationship for purposes of sending future unsolicited advertisements.***" 47 C.F.R. §64.1200(a)(4)(v) (emphasis added). So even if Vandersloot once had an "established business relationship" with ATYG (which he didn't), he comprehensively terminated that relationship with fifty-nine specifically pled "do-not-call" requests.

Moreover, ATYG's entire premise that every TCPA plaintiff must specifically plead lack of an "established business relationship" is faulty, resting as it does on a single citation to an out-of-Circuit district court case. *See* ECF #17-1 at 13-14. In that case (*Gillam v. Reliance First Capital, LLC)* the plaintiff, having answered only one call from the defendant, had understandable

difficulty in meeting the requirement that he show receipt of more than one "telephone solicitation" in a 12-month period. *See Gillam,* 21-cv-4774 at *3, 2023 WL 2163775 (E.D. New York, Feb. 22, 2023). The plaintiff tried to include unanswered calls to meet that requirement, and could not show that any of these calls were "solicitations." *Id.* at *3. *Gilliam* has no relationship to the facts here, where Vandersloot has received 137 contacts, the language from which shows that they were "solicitations" by any definition, and asked fifty-nine times for those contacts to stop. Vandersloot has more than sufficiently alleged "telephone solicitations" to meet the plausibility standard at the pleading stage, and ATYG's Motion to Dismiss should be denied on this point as well.

### E. The Ninth Circuit Court of Appeals Has Directly Held That Text Messages Are "Calls" Under The Telephone Consumer Protection Act.

ATYG spends five pages arguing that text messages are not "calls" under the TCPA without mentioning that the Ninth Circuit has directly held the opposite only a few months ago. *See* ECF #17-1 at 14-18. In *Howard v. Republican National Committee,* 164 F. 4th 1119 (9th Cir. 2026), the appellate panel held as follows:

> "[A]n auto-dialed text message to a phone number thus frequently entails an immediate intrusion on privacy comparable to that associated with the ring of an incoming auto-dialed phone call. ***That critical fact confirms that a text message is properly deemed to be a "call" within the meaning of the TCPA.***

*Id.* at 1124 (emphasis added).

ATYG—while not mentioning this case at all—may attempt to distinguish it on the basis that it dealt with Section 227(c) of the TCPA rather than Section 227(b). Briefly, the TCPA's Section b deals with contacts made by "automatic telephone dialing systems," (Count II of Vandersloot's Amended Complaint), while Section c concerns contacts made to individuals who have asked not to be contacted via a Do-Not Call Registry or otherwise (Count I of the Complaint). ATYG does not contest that a text message can be a "call" under Section b's 'auto-dialing'

provisions, but does claim that a text message is not a "call" under Section c. ATYG therefore maintains, vaguely, that Vandersloot's reference to any Section (b) cases "would be unavailing." *See* ECF # 17-1 at 18.

But there is nothing in the TCPA that would require a different meaning for "call" (as used in 47 U.S.C. §227(b)(1)(A)), as opposed to "telephone call" (as used in §227(c)(5)). If "calls" include text messages (and ATYG implicitly concedes that they do) then text messages received on phones are "telephone calls" as well. The *Howard* Court certainly thought so, ruling as it did—and without limitation—that "***a text message is properly deemed to be a "call" within the meaning of the TCPA.***" 164 F.4th 1119 at 1124 (emphasis added).

A note on statutory history: the original TCPA, being enacted in 1991, naturally did not mention text messages specifically. However, the Federal Communications Commission's regulations interpreted the statute's definition of "call" to include text messages, and the Ninth Circuit deferred to that interpretation. *See Satterfield v. Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (holding that the FCC had reasonably interpreted the TCPA to cover text messages). But, the United States Supreme Court has recently held that the FCC's regulations are not entitled to as much deference in TCPA cases;[5] hence, the Ninth Circuit in *Howard* took a fresh look at whether the TCPA properly covered text messages—and found that it did. In the appellate panel's words:

> Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, ***we think it is clear from Satterfield's substantive analysis that the conclusion would be the same even in the absence of Chevron deference.***

---

[5] *See McLaughlin Chiropractic Associates, Inc. v. McLaughlin Corporation,* 145 S. Ct. 2006 (2025).

*Howard,* 164 F.4th 1119 at 1123 (emphasis added). The *Howard* Court proceeded to conduct an independent statutory analysis that led to the same result as that reached in the earlier *Satterfield* case, namely, that text messages are covered by the TCPA.

Because *Howard* concerned a §227(b) case (although nothing in that decision's language limited the holding to that subsection) ATYG is reduced to arguing that text messages are somehow not covered by §227(c). However, multiple district courts *within* the Ninth Circuit have squarely rejected that argument, holding that *Howard* applies to the TCPA's §227(c) as well as to §227(b). The District Court for the Central District of California ruled (this last March) that "the Ninth Circuit in *Howard* reaffirmed *Satterfield* and held as follows: "That critical fact confirms that message is properly deemed to be a 'call' within the meaning of the TCPA."" *Taha v. Momentive Software, Inc.,* No. 8:25-cv-02330, *3 2026 WL 974297 (C.D. Cal., March 11, 2026) Moreover, the *Taha* Court rebuffed the argument (made here by ATYG) that the text of the two statutory subsections led to any different result. *See Taha* at *3 ("To argue that the addition of the word "telephone" [in the TCPA's §227(c)(5)] eliminates text messages ignores the redundancy of the term inherent to the definition.") And last month the District Court for the Western District of Washington rejected the same argument, noting that while the defendant in that case "cites several district court opinions concluding that §227(c) does not apply to text messages, ***each of those decisions is from outside of this Circuit.***" *Hopkins v. Homelight, Inc.,* No. 26-cv-5017, 2026 WL 2017320 (W.D. Wash., July 13, 2026) (emphasis added). "By contrast, [the *Hopkins* Court continued], district courts applying *Satterfield* and *Howard* ***within this Circuit have made clear that text messages must constitute calls under* §227(c) as well.**" *Id.* (emphasis added) (citing additional case law).

In short, text messages are "calls" within the meaning of both §227(b) *and* §227(c) of the TCPA, the Ninth Circuit has so held, and district courts within the Ninth Circuit have so held. As the *Hopkins* Court stated:

> This Court applies the governing law of this Circuit. Text messages constitute a call under §227(c).

*Hopkins,* *3. And for that reason, ATYG's arguments on this point should be rejected.

**F. <u>The Amended Complaint Plausibly and Specifically Alleges That ATYG's Calls and Texts to Vandersloot Were "Willful" Under the TCPA.</u>**

Vandersloot has more than pled that ATYG's calls and texts were "willful" for treble damage purposes. Vandersloot has specifically pled one hundred and thirty-seven TCPA-violating contacts. *See* ECF #15 at ¶¶ 21-25, 28-36, and at Exhibit A (#15-1). He has, moreover, pled that *all* of these calls and texts occurred after he had placed his name on the national Do-Not-Call Registry, and has even furnished proof of that placement. *See id.* at Exhibit B (ECF #15-2). Finally, he has described how he told ATYG—on *fifty-nine* successive occasions—to stop contacting him; the first fifty-eight requests were unheeded. *See* ECF #15 at ¶¶ 23, 25.

ATYG's argument (ECF #17-1 at 18-19) that even this level of pleading is insufficient would render TCPA lawsuits impossible to bring, and the courts do not so hold. "In general, courts in the Ninth Circuit have declined to dismiss separate causes of action for knowing or willful [TCPA] violations… . Additionally, several Ninth District courts have held that simply alleging knowing and/or willful TCPA violations for purposes of seeking treble damages is sufficient to withstand a motion to dismiss." *Gulden v. Liberty Home Guard, LLC,* No. CV 20-02465, 2021 WL 689912, *6 (D. Ariz., Feb. 23, 2021) (citing similar cases). In the *Gulden* Court's words the plaintiff, by alleging that the "Defendant's TCPA violations were willfully committed in that it purposefully, by design, knowingly, and intentionally programmed Plaintiff's name and phone

number into its automatic dialing system," and by further alleging that "Defendant's calls and texts were initiated to Plaintiff's cell phone number while it was registered on the national Do-Not-Call Registry," had "stated a plausible claim for relief." *Id.* at *7.

Other Ninth Circuit district courts have similarly held. *See Odom v. ECA Marketing, Inc.,* No. EDCV 20-851, 2020 WL 6114917, at *2 (C.D. Cal., Aug. 20, 2020) (denying a motion to dismiss even though the plaintiff alleged only a single pre-recorded phone call and had not alleged that "Defendant called him multiple times, or that Defendant called him after he objected to contact." The court observed that "though Defendant is correct that a single automated phone call, without more, may fall short of willfulness under the TCPA, a Rule 12(b)(6) motion requires only that a plaintiff has alleged facts that raise a "plausible inference" of liability."); *Robertson v. Fidelity Life Association,* No. 3:24-cv-00439, 2025 WL 3437213, at *4 (D. Nevada, Sept. 19, 2025) (denying motion to dismiss because although "Defendant may argue that its good faith belief that it was contacting a consenting party counters Plaintiff's claim for treble damages…[i]t does not, however, undermine Plaintiff's ability to state her claim. Plaintiff has stated sufficient facts that she did not provide prior express consent to Defendant to contact her…."); *Sapan v. Bloom Retirement Holdings, Inc.,* No. 8:24-cv-01213, 2025 WL 1718083, at *8 (C.D. Cal., April 14, 2025) (denying motion to dismiss "willful" allegations because the complaint "alleges that Defendant knew about the illegal calls, called telephone numbers to sell their services without checking the Do-Not-Call Registry, used a sophisticated calling system that illegally hid the caller's caller identification name, and intentionally violated the TCPA").[6]

---

[6] *See also Collins v. Enver Solar, Inc.,* No. SACV19-00146, 2021 WL 4551174, at *5 (C.D. Cal., May 26, 2021) (granting treble damages on five calls when plaintiff alleged that all five calls had been received after he had answered a previous call, asked not to be contacted, and advised that his name was on the Do-Not-Call registry); *Schmidt v. Amerassist A/R Solutions Inc.,* No. CV-20-00230, 2020 WL 6135181, at *6 (D. Ariz., Oct. 19, 2020) (granting treble damages on ten calls

Given this case law, Vandersloot has more than pled his right to treble damages for ATYG's contacts. ATYG's cited cases do not prove otherwise; rather, those cases involved obviously conclusory allegations. *See* ECF #17-1 at 18-20. For example, the Ninth Circuit affirmed the denial of treble damages at the summary judgment stage for some unsolicited fax advertisements, but this does not relate to the fitness—on a 12(b)(6) motion—of Vandersloot's detailed allegations. *See True Health Chiropractic, Inc. v. McKesson Corporation,* No. 22-15710, 2023 WL 7015279, *3 (9th Cir., Oct. 25, 2023); *reversed and remanded on other grounds by Mclaughlin Chiropractic Associates v. McKesson Corporation,* 606 U.S. 146 (2025). ATYG further cites *Bristow v. American National Insurance Company,* but there the plaintiff admitted that he had received no further calls after asking the defendant to stop. *See Bristow,* No. 2:20-cv-10752, 2021 WL 2201171, *3 (E.D. Mich., June 1, 2021).[7]

Such cases do not apply to the Amended Complaint here, where Vandersloot has alleged, a) more than one hundred TCPA-violating contacts, b) his placement on the Do-Not-Call Registry before any of these contacts occurred, and c) fifty-nine requests to ATYG to stop calling. This more than meets the pleading standard under the law cited above, and ATYG's Motion to Dismiss Vandersloot's claim for "willfulness" and associated treble damages should be denied.

### G. **<u>This Court Should—If It Does Not Deny ATYG's Motion to Dismiss—Grant Vandersloot Leave to Amend.</u>**

Vandersloot strongly maintains that he has more than adequately pled a TCPA case, and that ATYG's Motion should be denied. But, should the Court feel otherwise, Vandersloot would

---

when plaintiff had alleged that she "demanded …[the defendant] to cease contacting her on no less than 13 separate occasions").

[7] ATYG also cites (at ECF #17-1, 19) *Lucas v. Monitronics,* No. 1:17-cv-374, 2020 WL 6440255 (S.D. Ohio, Nov. 3, 2020), but this case involved obviously conclusory allegations. *See* id. at fn.3, ("[P]laintiff's conclusory allegation that … [defendant's] actions were "willful" is nothing more than a legal conclusion couched as a factual allegation.").

ask for leave to amend, which this Court should "freely give … when justice so requires." *See* Federal Rule of Civil Procedure 15(a)(2). And the case law repeats this theme, as this very District Court has observed that "[i]n cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment." *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corporation,* No. 1:17-cv-00519, 2019 WL 3097014, *2 (D. Idaho, June 22, 2018); *see also Deane v. Pacific Financial Group, Inc.,* No. C19-722, 2020 WL 2473547, *2 (May 13, 2020) (holding that "a proposed amendment is futile only if no set of facts can be provided under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") (W.D. Wash.) (internal citations omitted).

Vandersloot has pled already, in the Amended Complaint, nearly the strongest case a TCPA plaintiff can make before discovery, but he could plead yet additional detail if required. Specifically, he could include the body of every text sent from ATYG, a transcript of every phone call, and further specific detail on every one of the over fifty instances in which he asked ATYG to stop contacting him. Hence, Vandersloot—without in any way modifying his position that ATYG's Motion to Dismiss should be denied—would respectfully ask leave, in the alternative, to amend his Complaint should the Court find such amendment necessary.

## V. <u>CONCLUSION</u>

Vandersloot, for all of the reasons shown, has more than pled his claims with the specificity and plausibility required to defeat a 12(b)(6) motion, and ATYG's Motion to Dismiss should be denied accordingly. Should the Court hold otherwise, Vandersloot would ask (in the alternative) for leave to amend.

DATED: August 19, 2026.

/s/ Isaac Eddington

Isaac Eddington (ISB #12671)
Riverbend Management, Inc.
4609 West 65th South
Idaho Falls ID 83402
Tel: 208-534-7865
ieddington@rbm.us

*Attorney for Plaintiff Matthew Vandersloot*