Scott McKay (ISB#4309)
Nathan Pittman (ISB#9430)
NEVIN, BENJAMIN & McKAY LLP
303 West Bannock
P.O. Box 2772
Boise, Idaho 83701
Telephone: (208) 343-1000
Facsimile: (208) 345-8274
smckay@nbmlaw.com
npittman@nbmlaw.com

Alexandra N. Krasovec (*pro hac vice*)
Manatt, Phelps & Phillips LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4160
Facsimile: (310) 312-4224
akrasovec@manatt.com

Attorneys for the Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW VANDERSLOOT, an Idaho Resident,<br><br>Plaintiff,<br><br>vs.<br><br>ATYG, LLC, a New York limited liability Company,<br><br>Defendant. | CASE NO. 4:26-cv-275-DCN<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [DKT. 17]** |

## INTRODUCTION

Plaintiff's Opposition confirms dismissal is warranted. At best, Plaintiff alleges that he received 137 communications, most of which were text messages, in which the caller either identified themselves as "Steady Capital Solutions" or sent follow-up emails associated with that entity. Yet, Plaintiff concedes that he does not know the nature of the relationship between ATYG and Steady Capital Solutions, if any. If Plaintiff does not know whether Steady Capital is ATYG, an affiliate, an agent, or an entirely separate business, he cannot plausibly allege that ATYG initiated these communications or is vicariously liable for them.

While Plaintiff contends that three of the subject communications support some connection between ATYG and Steady Capital, he does not attach the actual text messages and call transcripts to his FAC (despite claiming to have these in his possession). Instead, Plaintiff asks ATYG and the Court to cross-reference multiple exhibits to his FAC (apparently compiled by The Telespam Project) and ultimately accept these summarized characterizations about what certain callers allegedly said or how Plaintiff purports to connect a given communication to Steady Capital Solutions. This is insufficient to plausibly allege TCPA liability against ATYG.

Beyond this, Plaintiff's claims fail for several additional reasons. As to his ATDS claim, Plaintiff relies on allegedly repetitive text messages and purported use of platforms such as Twilio or Telnyx. But these allegations are inapposite. After *Facebook*, the relevant question is not whether messages were sent in a similar format, through a mass-messaging platform, or even using an automated process. Rather, use of an ATDS turns on whether the equipment randomly or sequentially generated the telephone numbers themselves. The FAC does not allege that Plaintiff's telephone number was randomly or sequentially generated, let alone include facts from which this can be inferred.

Plaintiff's TCPA DNC claim under Section 227(c) likewise fails because he does not plausibly allege receipt of more than one "telephone solicitation" to the extent he failed to allege he lacked an established business relationship ("EBR") with ATYG. Even if he had, text messages are not covered by or actionable under Section 227(c), so Plaintiff cannot recover for those. For these reasons, and because Plaintiff has had multiple opportunities to amend, dismissal with prejudice is appropriate.

## ARGUMENT

### I. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE ANY THEORY OF LIABILITY.

Plaintiff's Opposition incorrectly contends that each of the 137 calls and text messages he received "are pled in detail, by caller name and date, and lead to no other conclusion than that Steady Capital is an alternate name (if not a related entity) of ATYG." Dkt. 20 at 4. The exhibits upon which Plaintiff relies to support this statement prove otherwise:

Exhibit A contains only dates, phone numbers, and communication types (i.e., call or text); it does not include the content of the communications or otherwise identify ATYG as the caller.

Exhibit C fares no better. Contrary to Plaintiff's characterization, Exhibit C does not track or correspond to the individual communications listed in Exhibit A. Exhibit A identifies each purported call or text by date and originating number, while Exhibit C contains only a single entry for each originating phone number along with Plaintiff's own descriptions and conclusions about that number's alleged significance. Thus, Exhibit C does not explain how each of the dozens of communications reflected in Exhibit A is connected to ATYG. Instead, Plaintiff repeatedly relies on his own subjective characterizations that certain callers were the "same" individuals as prior callers, that different numbers used "similar" language, or that a conversation at some point resulted in an email from a Steady Capital address. Those are not factual allegations showing that ATYG placed

or directed the subject communications; they are Plaintiff's unsupported inferences.

Plaintiff also places significant weight on allegations that three callers purportedly stated that "Steady Capital Solutions" was another name for ATYG. Dkt. 20 at 4. However, the FAC does not allege facts showing that these unidentified callers were agents or otherwise authorized to speak on behalf of ATYG. Further, and most importantly, Plaintiff simultaneously concedes that he does not know whether Steady Capital is an alternate name for ATYG or instead a separate company making calls on ATYG's behalf. Dkt. 20 at 4-5. Thus, even Plaintiff's allegations are insufficient to plausibly allege direct or vicarious TCPA liability on the part of ATYG.

That Plaintiff purportedly received emails from Steady Capital Solutions at some unidentified time after these calls is likewise insufficient to plausibly allege a theory of liability against ATYG. Courts routinely reject attempts to infer TCPA liability from post-call contacts or evidence merely showing some form of business relationship between the caller and defendant. *See, e.g.*, Dkt. 17-1 at 6-7 (*citing Scruggs, Barnes, Murray, Belleville*). Plaintiff tellingly does not address or attempt to differentiate these authorities.

Instead, Plaintiff relies upon a handful of cases that are readily distinguishable. In *Hollis v. Exp. Realty LLC*, the plaintiff alleged that "[t]he caller...told [Mr. Hollis] that the call was on behalf of [eXp] Realty" and "identified himself as [Mr.] Yoon at [eXp] Realty[.]" 2025 WL 2711424, at *3 (W.D. Wash. Sept. 23, 2025). And in *Workman v. CarGuard Admin. Inc.*, the plaintiff alleged that "***[d]uring the call***, [the agent] emailed Plaintiff a Vehicle Services Contract, which makes clear that the policy…would be administered by [the d]efendant and the contract for services would be between [the p]laintiff and [the d]efendant." 2024 WL 249160, at *2 (D. Ariz. Jan. 23, 2024). *Workman* further plead facts to plausibly allege vicarious liability, including that the defendant "directed that the calls be made" and that it "contracted with numerous agents to solicit the sale of

its car warranties via telemarketing." *Id.*[1] There are no similar allegations linking ATYG to the subject communications beyond a speculative association between Steady Capital and ATYG.

In this case, none of the callers identified themselves as calling from ATYG, nor does Plaintiff allege that ATYG directed the calls to be made or contracted with any third-party agents to place the calls. Plaintiff is not entitled to rely upon pure speculation that Steady Capital Solutions has some unknown affiliation to ATYG to avoid dismissal. *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (holding that speculative allegations concerning a business relationship are not enough to survive a motion to dismiss).

For these reasons, Plaintiff has failed to plausibly allege direct or vicarious TCPA liability against ATYG, and the FAC should be dismissed in its entirety on this basis.

## II. **THE FAC FAILS TO MEET BASIC FEDERAL PLEADINGS STANDARDS.**

As to whether the FAC is an improper shotgun pleading, Plaintiff's Opposition misses the point. ATYG does not argue that the FAC is a shotgun pleading merely because it contains multiple TCPA theories. ATYG challenges the pleading as deficient because it seeks relief under both Sections 227(b) and (c) of the TCPA in Count I yet fails to identify which specific communications supposedly violated which statutory provisions. *See* Dkt. 15, ¶¶ 29, 31, 35.

Plaintiff's exhibits to the FAC do not cure these deficiencies. The FAC never explains how the information contained in those exhibits maps onto the elements of the asserted TCPA claims.

[1] The cases cited in footnote 1 of the Opposition are also distinguishable. In *Reisman v. Gen Digital Inc.*, the plaintiff included screenshots of the actual text messages received, which linked to websites advertising the defendant's products. 2025 WL 2419960, at *3 (D. Ariz. Aug. 21, 2025). In *Ragsdale v. LeadPoint, Inc.*, the plaintiff received text messages that included links to websites that plaintiff alleged were owned by the defendant. 2024 WL 5424125, at *2 (C.D. Cal. Nov. 5, 2024). The plaintiff in *Charman v. Leadsmarket.com, LLC*, similarly alleged that the text messages contained a hyperlink to a website owned and operated by the defendant. 2025 WL 1883558, at *2 (S.D. Cal. July 7, 2025). No such allegations appear in the FAC.

As a result, ATYG and the Court are left to guess which of the 137 communications allegedly violated the TCPA's ATDS and/or DNC provisions.[2] This is a textbook shotgun pleading.

At minimum, Plaintiff should be required to provide a more definite statement identifying the communications that allegedly support each TCPA theory and the factual basis for concluding that those communications violated the particular statutory provisions invoked.

## III. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE USE OF AN ATDS.

Plaintiff contends he has plausibly alleged the use of an ATDS primarily because he repeatedly received similar messages. *See* Dkt. 20 at 10-12. However, that argument hinges entirely upon a line of pre-*Facebook* cases permitting ATDS claims to proceed past the pleadings based on generalized allegations concerning message content, call volume, or the presence of similar messages. *See id*. at 10-11 (citing *Hale*, *Holt*, *Szumilas*, *Erdman* and *Abante*). Those authorities are no longer pertinent.

As discussed in the Motion (*see* Dkt. 17-1 at 8-10), post-*Facebook*, an ATDS must have the capacity to use a random or sequential number generator to store or produce telephone numbers. 592 U.S. 395, 399-400, 409 (2021). The Ninth Circuit has interpreted this to mean that the telephone numbers themselves must be randomly or sequentially generated. *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1234 (9th Cir. 2022) ("The Supreme Court's recent decision in *Duguid*…underscores that an autodialer must randomly or sequentially generate and dial a ***telephone number***.") (emphasis added). Allegations that messages were impersonal, repetitive, or sent in large quantities are not enough. *Id*. Further, a system that sends identical texts to numbers selected from a customer or prospect list does not qualify as an ATDS merely because messages are generated automatically. *Perrong v. Montgomery Cnty. Democratic Comm.*, 2023 WL 4600423, at *1 (E.D. Pa. July 18,

---

[2] Plaintiff now admits he is not alleging the use of an artificial or prerecorded voice message. *See* Dkt. 20 at 12, n. 4.

2023), *aff'd*, 2024 WL 1651274 (3d Cir. Apr. 17, 2024) (finding plaintiff failed to plausibly allege Twilio was an ATDS despite the fact that Twilio "specializes in automated calls" where numbers were dialed from an existing list). Instead, the relevant inquiry is whether Plaintiff has alleged facts supporting a plausible inference that the equipment used to contact him generated telephone numbers randomly or sequentially. *Id*. Here, Plaintiff has not done so.

Indeed, the FAC contains no allegation that ATYG generated Plaintiff's telephone number randomly or sequentially. Nor does Plaintiff allege any facts suggesting that the texting platforms he references generated his or any other recipient's telephone numbers using a random or sequential number generator. Instead, Plaintiff alleges only that he received multiple messages containing similar language. However, the fact that similar messages were sent multiple times says nothing about how the telephone numbers were obtained. *See Facebook*, 592 U.S. at 404-07.

Plaintiff likewise cannot salvage his pleading by pointing to Twilio or Telnyx. The fact that a message may have been transmitted through a platform capable of automatically sending messages does not plausibly allege ATDS use under the TCPA. *See Perrong*, *supra*; *see also Northrup v. Innovative Health Ins. Partners, LLC*, 2020 WL 906199, at *6 (M.D. Fla. Feb. 25, 2020) (granting summary judgment for defendants where they identified undisputed record evidence showing that Twilio cannot generate random or sequential numbers). Plaintiff has not provided alleged any facts from which to infer that either platform generated telephone numbers randomly or sequentially, much less that any such functionality was used to contact Plaintiff.

Lastly, Plaintiff is incorrect that this issue may only be resolved at summary judgment. Numerous district courts, including in the Ninth Circuit, have dismissed ATDS claims at the pleadings stage for failure to plausibly allege ATDS use. *See, e.g.*, *Perrong*, *supra*; Dkt. 17-1 at 10-11 (citing *Andersen*, *Cupp*, and *Allison*).

Because Plaintiff alleges no facts from which to infer that his phone number was randomly or sequentially generated, Count II fails to state a plausible ATDS claim and should be dismissed.

## IV. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE RECEIPT OF A "TELEPHONE SOLICITATION" CALL.

As discussed in the Motion, the FAC does not allege that Plaintiff lacked an EBR with ATYG. Plaintiff attempts to rectify this deficiency by contending for the first time in his Opposition that he lacked any such EBR. But "Plaintiff may not amend his allegations through facts raised in opposition to a motion to dismiss." *King v. Navy Fed. Credit Union*, 699 F. Supp. 3d 864, 870 (C.D. Cal. 2023). The Court's analysis is confined to the allegations actually pleaded in the FAC, and those allegations do not address the existence or absence of an EBR. *Id*.

Plaintiff's fallback argument fares no better. He contends that any EBR would have been terminated by his alleged do-not-call requests. Dkt. 20 at 13-14. However, whether a purported EBR was terminated does not relieve Plaintiff of his obligation to plausibly plead all elements of his claim. It also does not rule out any further EBRs that can be created by later inquiries, for example. The FAC contains no allegation that Plaintiff lacked an EBR at the time of each challenged communication, and Plaintiff cannot remedy that omission through his Opposition.

## V. TEXT MESSAGES ARE NOT CALLS UNDER SECTION 227(C) OF THE TCPA.

Plaintiff's Opposition relies almost exclusively on the Ninth Circuit's decision in *Howard v. Republican National Committee* to support his argument that text messages are covered under Section 227(c) of the TCPA. *See* Dkt. 20 at 14-16. But *Howard* addressed a different statutory provision of the TCPA (Section 227(b)) which includes materially distinct language from Section 227(c). *Howard* also did not analyze the text of Section 227(c) or otherwise address the use of the phrase "telephone call" in that subsection, which carries a different meaning than the word "call" used in Section 227(b). *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 537 (7th Cir. 2026).

Accordingly, *Howard* does not resolve the question presented here.

The more persuasive and directly on-point authority is the Seventh Circuit's recent decision in *Steidinger v. Blackstone Medical Services*, as the first and, to-date, only circuit to expressly consider whether text messages are actionable under Section 227(c)(5).[3] The court concluded they are not. The Seventh Circuit emphasized that Congress used different language in different parts of the TCPA and that courts must give effect to those differences. While Sections 227(c)(1)-(4) repeatedly refer to "telephone solicitations," which the TCPA defines as the initiation of a "telephone call or message," Section 227(c)(5) creates a private right of action only for a person who has received more than one "telephone call." The Seventh Circuit held that this variation in wording was intentional and that the private right of action is narrower than the broader concept of a "telephone solicitation." *Id.*

That distinction is fatal to Plaintiff's heavy reliance on *Howard*. As *Steidinger* explained, Congress knew how to reference both "calls" and "messages" when it wanted to do so. Indeed, Section 227(a)(4)'s definition of "telephone solicitation" expressly distinguishes between a "telephone call" and a "message." By choosing the narrower phrase "telephone call" in Section 227(c)(5), Congress limited the private right of action to that category of communications only.

A federal district court recently adopted this same reasoning in *Rush v. SelectQuote Insurance Services, Inc.*, 2026 WL 2495598, at *4 (W.D. Mo. July 30, 2026). Quoting *Steidinger*, *Rush* recognized that Section 227(b) and Section 227(c)(5) "contain different language" and that subsection (b)'s private right of action is materially broader than the one Congress enacted in subsection (c). The court specifically noted that plaintiffs improperly "isolate the word 'call'" while

[3] While ATYG acknowledges that Plaintiff cites to two non-binding district court decisions in the Ninth Circuit that have held that text messages are covered under Section 227(c), those decisions were issued prior to *Steidinger* and do not address the key difference in language between Section 227(b) and (c). *See* Dkt. 20 at 16. Thus, those decisions are not persuasive.

ignoring that Section 227(c)(5) refers to a "telephone call" whereas Section 227(b) regulates "any call." The court therefore held that the textual differences between the two provisions "both explain[] and support[]" the conclusion that Section 227(c)(5) does not apply to text messages. Contrary to Plaintiff's contention (Dkt. 20 at 15), ATYG did not concede that text messages are "calls." ATYG merely highlights the key differences in language between Sections 227(b) and (c), which demonstrate why *Howard* cannot be extended to Section 227(c).

In short, Plaintiff's argument depends on treating the words "telephone call," "call," "message," and "telephone solicitation" as interchangeable despite Congress' deliberate choice of different terminology and even though Congress could not have intended to include text messages as they were not yet in existence. While Plaintiff may believe that there are compelling reasons for the Court to expand Section 227(c) to reach text messages, only ***Congress*** can do so. Accordingly, to the extent Plaintiff's Section 227(c) claim is predicated on text messages, it should be dismissed.

## VI. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE ANY RIGHT TO TREBLE DAMAGES.

Plaintiff's argument that he has adequately alleged a knowing or willful violation of the TCPA puts the cart before the horse. Treble damages are available under the TCPA ***only if*** there is an underlying TCPA violation that was committed knowingly or willfully. *See* 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5)(B). Yet, as discussed above, Plaintiff has failed to plausibly allege any actionable TCPA violation in the first instance. The FAC contains no facts showing that any of the calls or texts were made using an ATDS or artificial or prerecorded voice nor any facts establishing that ATYG was responsible for the calls or texts. Because the FAC fails to state a viable TCPA claim, Plaintiff unquestionably fails to allege facts adequate to support treble damages.

Allegations that ATYG allegedly contacted Plaintiff multiple times or that his requests not to contact him purportedly went "unheeded" do not independently establish willfulness absent a plausible allegation that the communications themselves violated the TCPA. Plaintiff's cited authorities in this regard are inapposite, as none of those cases involve willful claims that avoided dismissal where the underlying TCPA claims failed. Dkt. 20 at 17-19. Accordingly, Plaintiff's request for treble damages fails and should be dismissed.

## VII. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND.

Plaintiff's request for yet another opportunity to amend should be denied. Before filing the FAC, Plaintiff had the benefit of ATYG's motion to dismiss and a detailed meet-and-confer exchange in which ATYG identified the very pleading defects raised again here, including deficiencies with direct and vicarious liability, ATDS allegations, and the statutory basis for Plaintiff's Section 227(c) claims. Plaintiff nevertheless chose not to cure those deficiencies.[4]

As one court in the Ninth Circuit held when dismissing a TCPA case with prejudice, "Plaintiff already has amended his [original] Complaint once in an attempt to remedy the precise infirmit[ies] at issue" in this Motion but "failed to do so"; thus, any "further amendment would be futile" and a dismissal with prejudice is appropriate. *Jovanovic v. SRP Invs. LLC*, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021) (citing *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000)).

## CONCLUSION

For all the reasons above, Plaintiff's FAC should be dismissed in its entirety and with prejudice under Rule 12(b)(6).

[4] The emails attached to the Declaration of Isaac Eddington (Dkt. 20-1) merely highlight the tenuousness of Plaintiff's position. They demonstrate that Plaintiff not only had notice of the grounds for which ATYG intended to move to dismiss, but also that he faced similar pleadings challenges in other cases, yet he declined to remedy even those portions of the pleadings he acknowledged could be amended.

DATED this 2nd day of September, 2026.

MANATT, PHELPS & PHILLIPS LLP

/s/ Alexandra Krasovec

Alexandra Krasovec (pro hac vice)

Attorneys for Defendant ATYG, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Isaac J. Eddington
4609 West 65th South
Idaho Falls, ID 83402
Telephone: (208) 534-7865
ieddington@rbm.us

/s/ Alexandra N. Krasovec
Alexandra N. Krasovec