UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW VANDERSLOOT, an Idaho Resident,<br><br>Plaintiff,<br><br>v.<br><br>ATYG, LLC, a New York limited liability company,<br><br>Defendant. | Case No. 4:26-cv-00275-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant ATYG, LLC's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 17. Plaintiff Matthew Vandersloot opposes the Motion. Dkt. 20.

Upon review, and for the reasons set forth below, the Court DENIES the Motion.[1]

## II. BACKGROUND

Plaintiff Matthew Vandersloot is a natural person residing in Idaho. On January 19, 2016, Vandersloot registered two phone numbers with the National Do Not Call Registry–

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B).

one ending in "6733" and another ending in "9826." Dkt. 15-2. Between the dates of June 23, 2021, and June 17, 2025, Vandersloot purports Defendant, ATYG, a New York limited liability company, contacted him through texts and phone calls a total of one hundred and thirty-seven times from various numbers. Dkt 15-1. Vandersloot claims these calls were made from various names which are affiliated with, or otherwise connected to, ATYG. Dkt. 15, at 4. These affiliated names include Steady Capital Solutions, First Choice Capital, and Tier Funding. *Id.* Vandersloot also claims he specifically requested ATYG place him on their internal do not call list on fifty-nine occasions with the first such request occurring on April 21, 2021, however the persistent calls continued until the fifty ninth request on May 28, 2025, when the attempted contacts ceased. *Id.* at 4–5.

This case was originally filed in the District Court of the State of Idaho, County of Bonneville, Case No. CV10-25-3679 on June 23, 2025. Dkt. 1. On May 5, 2026, ATYG removed the case to federal court. ATYG then filed a motion to dismiss for failure to state a claim. Dkt. 14. Vandersloot filed an amended Complaint against ATYG rendering ATYG's motion to dismiss moot. Dkt. 15. ATYG filed a second motion to dismiss for failure to state a claim. Dkt. 17. Vandersloot responded in opposition (Dkt. 20) and ATYG replied (Dkt 21). Both parties also filed multiple notices of supplemental authority. *See, e.g.,* Dkts. 22, 23, 24, 25.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of

sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation modified).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding whether to grant a motion to dismiss, a court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continually adhered to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. DISCUSSION

Vandersloot's claims arise under the Telephone Consumer Protection Act

("TCPA"), which specifically prohibits the initiation of telephone solicitations to residential telephone subscribers and provides a private right of action for any violations. 47 U.S.C. § 227(b)(1)(A). Vandersloot claims the one hundred and thirty-seven unconsented calls and texts he received between the two numbers on the Registry was a negligent and knowing violation of the TCPA and a violation of the TCPA's prohibition on the use of automated dialing systems. Dkt. 15, at 4–7.

ATYG argues Vandersloot's First Amended Complaint (the "FAC") should be dismissed because: (i) Vandersloot fails to plausibly allege any theory of liability against ATYG; (ii) under Federal Rules of Civil Procedure 8 and 10 Vandersloot fails to meet basic federal pleadings standards; (iii) Vandersloot fails to plausibly allege use of an ATDS or an artificial or prerecorded voice; (iv) Count I specifically should be dismissed because Vandersloot fails to plausibly allege receipt of a "telephone solicitation" call; (v) Count I, specifically, should also be dismissed because it relies upon text messages to support a claim under Section 227(C) of the TCPA, and text messages are not calls as defined by that section; and (vi) Vandersloot's claims for treble damages fail to plausibly allege a knowing or willful violation of the TCPA. The Court will address each argument in turn.

**A. Direct and Vicarious Liability**

ATYG first argues the FAC fails to plausibly establish it made or initiated the communications at issue. Dkt. 17-1, at 5. According to ATYG, Vandersloot has not alleged ATYG owned the originating telephone numbers, employed the callers, or otherwise directly participated in placing the calls. *Id.* ATYG further argues the operative Complaint contains insufficient allegations of an agency relationship to establish vicarious liability.

*Id.* at 8. Vandersloot responds that the FAC identifies each communication by date and telephone number and provides additional facts connecting the communications to ATYG. Dkt. 20, at 3-7. Specifically, Vandersloot alleges three callers identified "Steady Capital Solutions" as an alternative name for ATYG and that other communications resulted in emails from "Steady Capital Solutions." *Id.*

The TCPA permits liability for communications initiated directly by a defendant and, under appropriate circumstances, for communications initiated by an agent acting on the defendant's behalf. *See Jones v. Royal Administration Services, Inc.*, 887 F.3d 443, 449–50 (9th Cir. 2018). At the pleading stage, Vandersloot does not need to conclusively establish the precise contractual or corporate relationship between ATYG and every individual involved in the communications. Rather, he must allege facts supporting a reasonable inference that ATYG initiated the communications or is otherwise legally responsible for them. Here, the allegations extend beyond a bare assertion that ATYG was responsible. Vandersloot identifies specific communications, describes statements allegedly connecting Steady Capital Solutions to ATYG, and alleges subsequent correspondence supporting the connection. Although ATYG disputes whether these facts establish direct or vicarious liability, at this stage, the Court must accept the well-pleaded allegations as true.

Accordingly, the Court concludes that Vandersloot has sufficiently alleged ATYG's responsibility for the alleged communications to survive dismissal. Whether the evidence ultimately establishes direct liability, an agency relationship, or neither is a question for a later stage of the proceedings.

**B. Federal Pleading Standard**

ATYG claims Vandersloot participated in "shotgun pleadings." Shotgun pleadings are pleadings that seek to overwhelm defendants with an unclear mass of allegations and make it impossible for the defendants to make informed responses to a plaintiff's allegations. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). A complaint is considered a shotgun pleading when it "does not give the Defendants fair notice of which claim is against whom." *Tuinstra v. Bonner Cnty.*, 2021 WL 2534983, at *3 (D. Idaho June 21, 2021) (citing *Harris v. Cnty. of San Diego.*, 2019 WL 6683367, at *6 (S.D. Cal. Dec. 5, 2019)).

The Court finds no basis to conclude Vandersloot's FAC constitutes a shotgun pleading. The FAC contains two principal statutory theories and supporting exhibits identifying the communications allegedly giving rise to the purported liability. *See* Dkt 15, at 5-9. Although some of the allegations overlap, the Court can reasonably discern that Count I concerns the TCPA's Do-Not-Call protections and Count II concerns alleged ATDS communications. *Id.*

The mere incorporation by Vandersloot of preceding factual allegations does not, by itself, render the FAC unintelligible. ATYG's briefing also demonstrates that it understands the nature of the claims sufficiently to challenge their individual elements. Accordingly, ATYG's argument that Vandersloot engaged in shotgun pleading is without merit.

**C. Section 227(c) Claims**

ATYG challenges Vandersloot's Section 227(c) claim on two separate grounds.

First, it disputes whether the FAC adequately alleges actionable telephone solicitations. Second ATYG argues text messages are not "telephone calls" within the meaning of Section 227(c)(5). Dkt. 17, at 2.

*1. Telephone Solicitations*

ATYG argues Vandersloot has not adequately alleged qualifying telephone solicitations, including the absence of an established business relationship. *Id*. Vandersloot counters that the communications concerned offers of business funding and that he neither requested, nor consented, to them. He further alleges he repeatedly instructed the callers to stop contacting him.

The TCPA defines "telephone solicitation" to include the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. 47 U.S.C. § 227(a)(4) (subject to specified exclusions). The FAC identifies communications containing offers of business financing and alleges repeated requests that the communications cease. *See* Dkt. 15. Taken as true, these allegations plausibly support the inference that Vandersloot received telephone solicitations rather than purely informational communications. ATYG's suggestion that the communications may have arisen from a prior business inquiry does not, standing alone, resolve whether an applicable exemption or established-business-relationship defense defeats the claim, particularly considering the alleged requests to stop contacting Vandersloot. Accordingly, dismissal is not warranted on this ground.

*2. Whether Text Messages Constitute Telephone Calls*

ATYG next argues Vandersloot cannot state a claim under Section 227(c)(5) of the

TCPA because the provision authorizes a private right of action only for the receipt of more than one "telephone call" in violation of regulations prescribed under section 227(c), and text messages are not telephone calls. Vandersloot responds that the TCPA's protections against unwanted telephone solicitations encompass text messages and that the term "telephone call" in 225(c)(5) should not be construed to include them.

The Ninth Circuit has not directly addressed whether a text message constitutes a "telephone call" under § 227(c)(5). Its decisions interpreting the TCPA's use of the term "call," however, provide relevant guidance. In *Satterfield v. Simon & Schuster, Inc.*, the Ninth Circuit held that a text message is a "call" within the meaning of the TCPA. 569 F.3d 946, 952–54 (9th Cir. 2009). In *Van Patten v. Vertical Fitness Group, LLC*, the circuit recognized the TCPA's restrictions encompass both voice calls and text messages to wireless numbers. 847 F.3d 1037, 1041, 1043 (9th Cir. 2017). And in *Howard v. Republican National Committee*, the Ninth Circuit reaffirmed that a text message qualifies as a "call" under the TCPA, explaining that *Satterfield* would have reached the same result even without Chevron deference. 164 F.4th 1119, 1123–24 (9th Cir. 2026). Although those cases all arose under § 227(b), rather than § 227(c)(5), they establish that the TCPA's use of "call" is not necessarily limited to voice communications.

Moreover, several district courts within the Ninth Circuit have considered the precise question presented in this case and concluded text messages may constitute telephone calls under § 227(c). In *Wilson v. MEDVIDI Inc.*, the Northern District of California rejected the argument that § 227(c) excludes text messages, reasoning that the ordinary meaning of "call" encompasses oral and written communications and that neither

the text, structure, nor the purpose of the TCPA supports distinguishing between written and oral telephone solicitations. 2025 WL 2856295, at *3–5 (N.D. Cal. Oct. 7, 2025). The court specifically concluded that "telephone call," as used in § 227(c), encompasses the text messages at issue. *Id.* at *5.

Similarly, in *Esquivel v. Mona Lee, Inc.*, the Southern District of California concluded that text messages could support a private right of action under § 227(c)(5). 2025 WL 3275607, at *3–5 (S.D. Cal. Nov. 24, 2025). That court relied on the Ninth Circuit's recognition that text messages qualify as calls under the TCPA, the statutory definition of "telephone solicitation" as the initiation of a "telephone call or message," and Federal Communications Commission ("FCC") guidance expressly confirming that the National Do-Not-Call Registry's protections extend to marketing text messages. *Id.* The *Esquivel* court also noted the FCC's 2024 amendment to 47 C.F.R. § 64.1200(e), which expressly provides that the Do-Not-Call provisions in paragraphs (c) and (d) apply to telephone solicitations and telemarketing calls or text messages to wireless telephone numbers. *Id.*

These district court decisions are not binding on the Court. Nevertheless, the Court finds their reasoning to be persuasive. The statutory text supports those courts' conclusions. Section 227(c)(1) directs the FCC to protect residential telephone subscribers' privacy rights by adopting regulations concerning telephone solicitations. The statute defines a "telephone solicitation" as "the initiation of a telephone call or message" for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. 47 U.S.C. § 227(a)(4) (emphasis added). That definition expressly contemplates that a

telephone solicitation may take the form of a message, and § 227(c)(5), which creates a private right of action for repeated violations of regulations prescribed under that subsection, should be read in the context of those protections and definitions.

The Court also finds the reasoning that excluding text messages would create an artificial distinction between communications that implicate the same privacy interests to be persuasive. As the Ninth Circuit has recognized, unsolicited telemarketing calls and text messages both invade recipients' privacy and disturb their solitude. *Van Patten*, 847 F.3d at 1043. The Court does not understand the statutory use of "telephone call" to require that the communication be transmitted through a voice conversation when the TCPA elsewhere recognizes that a telephone solicitation may be initiated through a text message.

ATYG's argument in opposition relies heavily on *Steidinger v. Blackstone Medical Services*, in which the Seventh Circuit concluded that "telephone call" under § 227(c)(5) does not encompass text messages. 182 F.4th 532, 535–40 (7th Cir. 2026). In that case, the Seventh Circuit reasoned that the ordinary meaning of "telephone call" at the time of the TCPA's enactment in 1991 referred to voice communications and that Congress's use of "telephone call" in § 227(c)(5), rather than the broader term "call" in § 227(b), reflected a distinction between the provisions. *Id.* Several district courts outside this Circuit have also adopted that reasoning. *See Radvansky v. 1st Class Medical*, 2026 WL 2858562, at *2–3 (D. Colo. Sept. 23, 2026); *Brown v. Hursh Group, LLC*, 2026 WL 2906613, at *2–3 (D. Colo. Sept. 28, 2026); *Lowrey v. Twilio, Inc.*, 2026 WL 2958730, at *6 (W.D. Va. Oct. 1, 2026); *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, 2026 WL 2673068, at *1–3 (M.D.N.C. Sept. 3, 2026); *Conrad v. Hart Consumer Products*, 2026 WL 2741623, at *6–

13 (N.D. Ala. Sept. 16, 2026); *Bronstin v. Happy Cabbage Analytics, Inc.*, 2026 WL 3257600 (M.D. Pa. October 29, 2026).

The Court respectfully declines to follow *Steidinger* and the district court decisions adopting its reasoning. Although the difference in wording between §§ 227(b) and 227(c)(5) warrants the Court's consideration, it does not overcome the broader statutory context. Section 227(c) expressly defines telephone solicitation to include the initiation of a telephone call or message, and the FCC's implementing regulation now expressly confirms that the Do-Not-Call protections apply to telemarketing text messages sent to wireless numbers. *See* 47 C.F.R. § 64.1200(e).[2] Here, the Court finds the FCC's interpretation consistent with the statutory text and the Ninth Circuit's recognition that text messages constitute calls under the TCPA. Accordingly, the Court concludes that a text message may constitute a "telephone call" for purposes of § 227(c)(5) and will not dismiss Vandersloot's FAC on this basis.

**D. Section 227(b) Claims**

ATYG next argues Vandersloot has not plausibly alleged the use of an Automatic Telephone Dialing System ("ATDS"). Dkt. 17-2, at 9–13. Under 47 U.S.C. § 227(b)(1)(A), it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [ATDS] or an artificial or prerecorded voice," in certain situations including but

[2] The Court recognizes that, post *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), it must exercise independent judgment in interpreting the statute and cannot defer to the FCC's interpretation merely because the statute is ambiguous. The FCC's interpretation, however, remains relevant to the extent it is persuasive. *See McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 145 S. Ct. 2006 (2025).

not limited to a "cellular telephone service." *Barton v. Real Innovation Inc.*, 792 F. Supp. 3d 1195, 1205 (W.D. Wash. 2025). The Ninth Circuit has further explained that the equipment must generate telephone numbers randomly or sequentially, rather than merely dial numbers from a preexisting list. *Borden v. eFinancial*, LLC, 53 F.4th 1230, 1233 (9th Cir. 2022).

ATYG argues Vandersloot relies primarily on the repetitive nature of the messages and their alleged transmission through automated messaging platforms to support his claims. According to ATYG, those allegations do not establish random or sequential number generation, particularly where the messages appear to concern a specific business-funding inquiry. ATYG asserts *Allison* should be instructive here, however in *Allison*, the plaintiff pleaded facts providing the defendant obtained their phone number through previous business dealings. *See Allison v. Wells Fargo Bank, N.A.*, 2022 WL 10756885, at *2 (S.D. Cal. Oct. 18, 2022). In this case, Vandersloot has not pled any such facts.

Vandersloot, in Exhibit D, identifies 24 text messages allegedly sent using an ATDS and alleges their content, timing, repetition, and originating platforms support a reasonable inference of automated dialing. *See* Dkt 15-4. The Court recognizes that allegations of repeated or automated communications, without more, do not necessarily establish use of an ATDS. *See, e.g., Facebook, Inc. v. Duguid,* 592 U.S. 395, 406 (2021) (explaining repeated calls, speed dialing, and automated responses are insufficient to establish TCPA liability as any of those mediums could inadvertently "affect ordinary cell phone owners in the course of commonplace usage . . ."); *Borden*, 53 F.4th at 1236. Nor does the alleged use of a commercial messaging platform independently establish that the equipment meets

the legal threshold for an automated dialing system. Nevertheless, at the pleading stage, Vandersloot cannot plausibly identify the precise equipment used by ATYG or establish its technical capabilities without discovery. The relevant question then is whether the pleaded facts, considered together, allow for a reasonable inference that the equipment used meets the legal standard.

Considering the specific communications identified in Exhibit D and the allegations concerning their transmission, the Court concludes, for purposes of this ruling, that Vandersloot has alleged sufficient circumstantial facts to permit his ATDS claim to proceed.

**D. Willfulness and Treble Damages**

Finally, ATYG argues Vandersloot has failed to plausibly allege knowing or willful violations sufficient to support an award of treble damages. The TCPA permits courts, in their discretion, to increase statutory damages up to three times the amount otherwise recoverable upon a finding that a defendant knowingly or willfully violated the statute. 47 U.S.C. §§ 227(b)(3), (c)(5).

Here, Vandersloot alleges he received one hundred and thirty-seven unsolicited calls and text messages after registering his telephone numbers on the National Do-Not-Call Registry. Dkt. 15, at 21–25. He further alleges he instructed the callers to cease contacting him on fifty-nine occasions, yet the communications continued. *Id.* Accepting these allegations as true, the Court finds Vandersloot has plausibly alleged knowing or willful

conduct sufficient to preserve his request for enhanced statutory damages.[3]

ATYG's challenges to the sufficiency and reliability of these allegations do not warrant dismissal at this stage. Whether Vandersloot can substantiate the alleged requests to cease communications, establish that ATYG was responsible for the subsequent contacts, and ultimately demonstrate knowing or willful violations are matters to be determined on a more developed record. At the pleading stage, however, Vandersloot need only allege facts supporting a plausible inference of such conduct. He has done so. Accordingly, the Court will not dismiss Vandersloot's request for treble damages at this time.

## V. CONCLUSION

The Court concludes that Vandersloot has sufficiently alleged ATYG's responsibility for the challenged communications and has provided adequate notice of his claims under Rules 8 and 12. The Court further concludes that text messages are not categorically excluded from § 227(c)(5), and that the allegations concerning telephone solicitations, ATDS use, and willfulness are sufficient to survive the present Motion.

///

///

///

[3] In *Vandersloot v. Pro Source Lending Group, LLC*, 2026 WL 2858619, at *2 (D. Idaho Sept. 23, 2026), District of Idaho Senior Judge B. Lynn Winmill addressed substantially similar allegations involving the same plaintiff. There, Judge Winmill concluded that allegations of 38 requests to cease communications over approximately three years, followed by continued contact, plausibly supported an inference of knowing or willful TCPA violations. *Id.* Judge Winmill further explained the plaintiff was not required at the pleading stage to identify the date of every request, the person with whom he spoke, or that person's response. *Id*. Although that decision involved a different defendant and separate communications, the Court finds its reasoning persuasive here.

## VI. ORDER

Now, therefore, **IT IS HEREBY ORDERED:**

1. ATYG's Motion to Dismiss (Dkt. 17) is DENIED.

DATED: November 16, 2026

David C. Nye
U.S. District Court Judge